**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| MARSH SUPERMARKETS, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim-Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DON E. MARSH, | ) | |
| | ) | |
| Defendant/Counterclaim-Plaintiff, | ) | CASE NO. 1:09-cv-00458-DFH-DML |
| | ) | |
| v. | ) | |
| | ) | |
| EMPLOYMENT AGREEMENT BY | ) | |
| AND BETWEEN DON E. MARSH AND | ) | |
| MARSH SUPERMARKETS, INC. | ) | |
| DATED AUGUST 3, 1999, AS | ) | |
| AMENDED | ) | |
| JANUARY 1, 2005 and | ) | |
| DECEMBER 30, 2005, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

**DON E. MARSH'S ANSWER, COUNTERCLAIM, AND THIRD-PARTY**
**COMPLAINT TO MARSH SUPERMARKETS' FIRST AMENDED COMPLAINT**

The defendant, Don E. Marsh ("Mr. Marsh"), by counsel, for his Answer to the First

Amended Complaint ("Amended Complaint") filed by the plaintiff Marsh Supermarkets, Inc.

("the Company"), states as follows:

1. Mr. Marsh admits that he was the Chairman and Chief Executive Officer ("CEO")

of the Company until October 2006, but is without knowledge sufficient to admit or deny the

allegations regarding the Company's repose. Mr. Marsh denies the remaining allegations set

forth in paragraph 1 of the Amended Complaint.

2. Mr. Marsh admits that he was CEO of the Company, but denies the remaining

allegations set forth in paragraph 2 of the Amended Complaint.

3.      Mr. Marsh denies the allegations set forth in paragraph 3 of the Amended Complaint.

4.      Mr. Marsh admits that he recorded more than one meeting at which employees of the Company were present for the purpose of protecting the Company from potentially fraudulent acts of other officers of the Company, but denies the remaining allegations set forth in paragraph 4 of the Amended Complaint.

5.      Upon information and belief, Mr. Marsh admits the allegations set forth in paragraph 5 of the Amended Complaint.

6.      Mr. Marsh admits the allegations set forth in paragraph 6 of the Amended Complaint.

7.      Mr. Marsh admits the allegations set forth in paragraph 7 of the Amended Complaint.

8.      Mr. Marsh admits the allegations set forth in paragraph 8 of the Amended Complaint.

9.      Mr. Marsh denies that the e-voucher system was not a part of the Company's normal financial accounting systems, is without knowledge sufficient to admit or deny the amount of expenses reimbursed through the e-voucher system, and denies the remaining allegations set forth in paragraph 9 of the Amended Complaint.

10.      Mr. Marsh denies the allegations set forth in paragraph 10 of the Amended Complaint.

11.      Mr. Marsh denies the allegations set forth in paragraph 11 of the Amended Complaint.

12.      Mr. Marsh denies the allegations set forth in paragraph 12 of the Amended Complaint.

13.      Mr. Marsh denies the allegations set forth in paragraph 13 of the Amended Complaint.

14.      Mr. Marsh denies the allegations set forth in paragraph 14 of the Amended Complaint.

15.      Mr. Marsh admits that he was a member of the World Presidents' Organization, the Chief Executives' Organization, the World Economic Forum, CIES, the American Arbitration Association, and the American Management Association, admits that he attended various international meetings of these organizations in conjunction with his membership, is without knowledge sufficient to admit or deny the Company's "estimates," and denies the remaining allegations set forth in paragraph 15 of the Amended Complaint.

16.      Mr. Marsh admits that he allowed vendors to provide him benefits, admits that the Company's jet may have been used in conjunction with some of Mr. Marsh's travel, is without knowledge sufficient to admit or deny the Company's "estimates" or with respect to specific vendor-related trips or benefits, and denies the remaining allegations set forth in paragraph 16 of the Amended Complaint.

17.      Mr. Marsh is without knowledge sufficient to admit or deny the Company's "estimates," and denies the remaining allegations set forth in paragraph 17 of the Amended Complaint.

18.      Mr. Marsh denies the allegations set forth in paragraph 18 of the Amended Complaint.

19.     Mr. Marsh denies the allegations set forth in paragraph 19 of the Amended Complaint.

20.     Mr. Marsh is without knowledge sufficient to admit or deny the Company's "estimates," and denies the allegations set forth in paragraph 20 of the Amended Complaint.

21.     Mr. Marsh denies the allegations set forth in paragraph 21 of the Amended Complaint.

22.     Mr. Marsh denies the allegations set forth in paragraph 22 of the Amended Complaint.

23.     Mr. Marsh denies the allegations set forth in paragraph 23 of the Amended Complaint.

24.     Mr. Marsh denies the allegations set forth in paragraph 24 of the Amended Complaint.

25.     Mr. Marsh denies the allegations set forth in paragraph 25 of the Amended Complaint to the extent those allegations imply wrongdoing or improper conduct. Mr. Marsh admits that the Company's jet was used for Company activity that included hunting trips with the knowledge and participation of other Company officers and board members.

26.     Mr. Marsh admits that he and members of his family attended the Macy's Thanksgiving Day Parade in November 2005, but denies the remaining allegations set forth in paragraph 26 of the Amended Complaint.

27.     Mr. Marsh denies the allegations set forth in paragraph 27 of the Amended Complaint.

28.     Mr. Marsh denies the allegations set forth in paragraph 28 of the Amended Complaint.

29.     Mr. Marsh denies the allegations set forth in paragraph 29 of the Amended Complaint.

30.     Mr. Marsh denies the allegations set forth in paragraph 30 of the Amended Complaint.

31.     Mr. Marsh denies the allegations set forth in paragraph 31 of the Amended Complaint.

32.     Mr. Marsh denies the allegations set forth in paragraph 32 of the Amended Complaint.

33.     Mr. Marsh admits that the Company made a number of charitable contributions while he was CEO, is without knowledge sufficient to admit or deny all of the contributions made during that time, and denies the remaining allegations set forth in paragraph 33 of the Amended Complaint.

34.     Mr. Marsh denies the allegations set forth in paragraph 34 of the Amended Complaint.

35.     Mr. Marsh admits that the Company paid for annual Christmas cards, which may have contained pictures of Mr. Marsh and his family, but denies the remaining allegations set forth in paragraph 35 of the Amended Complaint.

36.     Mr. Marsh denies the allegations set forth in paragraph 36 of the Amended Complaint.

37.     Mr. Marsh denies the allegations set forth in paragraph 37 of the Amended Complaint.

38.     Mr. Marsh denies the allegations set forth in paragraph 38 of the Amended Complaint.

39.     Mr. Marsh denies the allegations set forth in paragraph 39 of the Amended Complaint.

40.     Mr. Marsh denies the allegations set forth in paragraph 40 of the Amended Complaint.

41.     Mr. Marsh denies the allegations set forth in paragraph 41 of the Amended Complaint.

42.     Mr. Marsh admits that he recorded more than one meeting at which employees of the Company were present for the purpose of protecting the Company from potentially fraudulent acts of other officers of the Company, but denies the remaining allegations set forth in paragraph 42 of the Amended Complaint.

43.     Mr. Marsh is without knowledge sufficient to admit or deny the allegations set forth in paragraph 43 of the Amended Complaint.

44.     Mr. Marsh denies the allegations set forth in paragraph 44 of the Amended Complaint.

45.     Mr. Marsh denies that he is responsible for the Company's current tax situation and is without knowledge sufficient to admit or deny the allegations set forth in paragraph 45 of the Amended Complaint.

### Count I: Breach of Employment Agreement

46.     Mr. Marsh incorporates by reference the answers set forth in paragraphs 1 through 45.

47.     Mr. Marsh denies the allegations set forth in paragraph 47 of the Amended Complaint.

48.     Mr. Marsh denies the allegations set forth in paragraph 48 of the Amended Complaint.

49.     Mr. Marsh denies the allegations set forth in paragraph 49 of the Amended Complaint.

50.     Mr. Marsh denies the allegations set forth in paragraph 50 of the Amended Complaint.

51.     Mr. Marsh denies the allegations set forth in paragraph 51 of the Amended Complaint.

WHEREFORE, Defendant Don E. Marsh, by counsel, respectfully requests that Plaintiff Marsh Supermarkets, Inc. take nothing by way of its claim for Breach of Employment Agreement against Don E. Marsh, that the Court enter judgment in favor of Mr. Marsh on the Company's claims, and that the Court award Mr. Marsh all other appropriate relief, including costs of these proceedings and his attorneys fees.

## Count II: Fraud and Deceit

52.     Mr. Marsh incorporates by reference the answers set forth in paragraphs 1 through 51.

53.     Mr. Marsh denies the allegations set forth in paragraph 53 of the Amended Complaint.

54.     Mr. Marsh denies the allegations set forth in paragraph 54 of the Amended Complaint.

55.     Mr. Marsh denies the allegations set forth in paragraph 55 of the Amended Complaint.

56.    Mr. Marsh denies the allegations set forth in paragraph 56 of the Amended Complaint.

57.    Mr. Marsh denies the allegations set forth in paragraph 57 of the Amended Complaint.

WHEREFORE, Defendant Don E. Marsh, by counsel, respectfully requests that Plaintiff Marsh Supermarkets, Inc. take nothing by way of its claim for Breach of Employment Agreement against Don E. Marsh, that the Court enter judgment in favor of Mr. Marsh on the Company's claims, and that the Court award Mr. Marsh all other appropriate relief, including costs of these proceedings and his attorneys fees.

### Count III: Claim Under Section 502(a)(3)(B)(ii) of ERISA

58.    Mr. Marsh incorporates by reference the answers set forth in paragraphs 1 through 57.

59.    Mr. Marsh admits the allegations set forth in paragraph 59 of the Amended Complaint.

60.    Mr. Marsh admits that the Company terminated him "without Cause" pursuant to Section 7.4 of the Employment Agreement and that he has received payment from the Company for a portion of the Salary Continuation Benefit and a lump sum payment for insurance benefits, but denies the remaining allegations set forth in paragraph 60.

61.    Mr. Marsh denies the allegations set forth in paragraph 61 of the Amended Complaint.

62.    Mr. Marsh denies the allegations set forth in paragraph 62 of the Amended Complaint.

63.     Mr. Marsh admits the allegations set forth in paragraph 63 of the Amended Complaint.

64.     Mr. Marsh asserts that the ERISA provision cited in paragraph 64 of the Amended Complaint speaks for itself.

WHEREFORE, Defendant Don E. Marsh, by counsel, respectfully requests that Plaintiff Marsh Supermarkets, Inc. take nothing by way of its claim for Breach of Employment Agreement against Don E. Marsh, that the Court enter judgment in favor of Mr. Marsh on the Company's claims, and that the Court award Mr. Marsh all other appropriate relief, including costs of these proceedings and his attorneys fees.

## AFFIRMATIVE DEFENSES

For his affirmative defenses to Plaintiff Marsh Supermarkets, Inc.'s Amended Complaint, Don E. Marsh states that:

1.     The Company has released its claims against Mr. Marsh pursuant to Section 12.7 of the Employment Agreement.

2.     The Company is not entitled to relief for its claims because Section 14 of the Employment Agreement provides that the Company shall indemnify Mr. Marsh to the maximum extent permitted by law, and the Company has a duty to indemnify Mr. Marsh to the fullest extent of the law.

3.     The Company is not entitled to relief for its claims because Section K of Article XII of the Company's Articles of Incorporation following the merger provides that the Company shall indemnify Mr. Marsh.

4.     The Company is not entitled to relief for its claims because Section 5.10 of the Agreement and Plan of Merger provides that the Company shall indemnify Mr. Marsh.

5.      The Company's claims seeking recovery for the amounts it has already paid Mr. Marsh are barred by Section 12.7 of the Employment Agreement, which provides that payments made under the Employment Agreement are final.

6.      The Company's claims are barred by waiver, laches, and estoppel.

7.      The Company's claims for equitable recovery are barred because the Company is not free from wrongdoing and has unclean hands.

8.      The Company's claims are barred by one or more applicable statutes of limitations.

9.      The Company has not satisfied all conditions precedent to bringing any action against Mr. Marsh because the Company has breached its obligation to make payments as required under the Employment Agreement, including Salary Continuation payments and payments for attorneys fees as incurred.

WHEREFORE, Defendant Don E. Marsh, by counsel, respectfully requests that Plaintiff Marsh Supermarkets, Inc. take nothing by way of its Amended Complaint against Don E. Marsh, and for all other appropriate relief, including costs of these proceedings.

### COUNTERCLAIM AGAINST MARSH SUPERMARKETS, INC. AND THIRD-PARTY COMPLAINT AGAINST EMPLOYMENT AGREEMENT BY AND BETWEEN DON E. MARSH AND MARSH SUPERMARKETS, INC.

#### Common Allegations

1.      Don E. Marsh ("Mr. Marsh") was chief executive officer of Marsh Supermarkets ("the Company") from approximately 1968 until October 13, 2006.

2.      The Company is an Indiana corporation with its principal place of business in Indianapolis, Indiana.

3.      This Court has federal question jurisdiction over Mr. Marsh's Counterclaim and Third-Party Complaint under the Employee Retirement Income Security Act ("ERISA") and also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

### Mr. Marsh's Value to the Company

4.      Mr. Marsh was and is recognized internationally as a leader and innovator in the grocery store industry. For example, during his tenure at the Company, Mr. Marsh served as the president of the International Centre for Food Trade and Industry ("CIES"), which is headquartered in Paris, France. This organization does research, education and training, and studies marketing, information systems and warehousing in the retail and wholesale food distribution industry and serves as a catalyst between retailers and manufacturers and looks for trends on a global basis.

5.      Mr. Marsh's involvement with CIES was well-known to the Company and provided significant benefits to the Company. Because of his involvement with CIES, and similar organizations, Mr. Marsh was able to identify innovations and advancements in grocery retailing making inroads in other countries and implement them in the Company's operations.

6.      Mr. Marsh also caused the CIES to commission what is known as the "Marsh Super Study," which was the largest, most comprehensive study ever attempted for the food industry. The study was so significant that the trade magazine "Progressive Grocer" devoted an entire issue to reporting some of the results, which changed the industry's direction in terms of merchandising.

7.      Mr. Marsh's innovation in the industry is legendary. For example, a Marsh grocery store in Troy, Ohio was the first grocery store in the United States to utilize the now-ubiquitous UPC scanner.

8.     Moreover, under Mr. Marsh's leadership, the Company had or explored grocery or food distribution operations on at least three continents.

9.     Mr. Marsh was also the public face of the Company locally. Mr. Marsh is one of the most recognizable marketing figures in Central Indiana. Mr. Marsh's presence in the community as an ambassador for the Company provided the Company with an invaluable benefit and tremendous goodwill.

### The "E-voucher" System

10.     During Mr. Marsh's tenure as president, chairman, and chief executive officer of Marsh Supermarkets, the Company utilized an "e-voucher" system for handling business expenses incurred by its executives, including its chief financial officer and general counsel.

11.     The e-voucher system had been in place for years before Mr. Marsh's departure from the Company in 2006.

12.     The e-voucher system traces its roots back to Mr. Marsh's father, Ermal Marsh, and was established in conjunction with the Company's outside accounting firm.

13.     The e-voucher system was established as an "accountable plan" such that reimbursements through the plan were not chargeable to the employee as income.

14.     The Company's financial records were audited every year by an outside accounting firm.

15.     These audits included, or should have included, the e-voucher system and the Company's petty cash account.

16.     The outside accounting firm never raised any concerns with respect to the e-voucher system or the Company's petty cash account.

17.     Any allegation by the Company that it was not aware of the e-voucher system or Mr. Marsh's use of that system until 2006 is false.

### Mr. Marsh's Employment Agreement

18.     On information and belief, between 1999 and 2002, the Company was concerned that a possible corporate takeover might cause key employees to seek other job opportunities. To retain these employees, the Company executed employment agreements (collectively, the "Plan") with certain high ranking employees, including Mr. Marsh.

19.     Putting the Plan into effect required an ongoing administrative "scheme" as defined by ERISA because the Company might have to determine its employees' eligibility for and level of benefits on multiple occasions by analyzing each employee's particular circumstances in light of the applicable criteria.

20.     The Plan provides that certain employees of the Company are entitled to severance benefits under certain circumstances and is governed by ERISA. 29 U.S.C. § 1001 *et seq.* The Company is the Administrator for the Plan.

21.     Mr. Marsh and the Company entered into an Employment Agreement dated August 3, 1999, which was subsequently amended on December 29, 2005 and September 21, 2006 (collectively, the "Employment Agreement"). A copy of the Employment Agreement is attached hereto as Exhibit 1.

22.     The first paragraph of Section 7.4 of the Employment Agreement provides that, "At any time during the Term, the Board of Directors of the Company may terminate this Agreement without Cause by giving [Mr. Marsh] a Notice of Termination, and [Mr. Marsh's] employment by the Company shall terminate at the close of business on the last day of the Notice Period."

23.     The third paragraph of Section 7.4 of the Employment Agreement provides, in pertinent part:

> The Company shall pay to [Mr. Marsh] the Salary Continuation Benefit over a period equal to three (3) years from the termination date. (By way of example, if [Mr. Marsh's] annual Salary Continuation Benefit were equal to $1,500,000, then the Company would pay [Mr. Marsh] three (3) times that amount, or $4,500,000, payable monthly at the rate of $125,000 per month).

24.     Section 8.7 of the Employment Agreement defines the Salary Continuation Benefit as:

> [A]n annual amount equal to the sum of (a) the highest annualized Base Salary of [Mr. Marsh] in effect at any time within five (5) years prior to the date of termination; plus (b) the largest of the annual bonuses paid to [Mr. Marsh] for the ten (10) years preceding the termination date. An amount equal to one-twelfth of the salary Continuation Benefit shall be paid to [Mr. Marsh] or his designee on the first day of each calendar month.

25.     On or about September 28, 2006, the Company transmitted a Notice of Termination of Employment to Mr. Marsh, notifying him that his employment was being terminated without cause effective October 13, 2006, pursuant to Section 7.4 of the Employment Agreement. A copy of the Notice of Termination of Employment is attached hereto as Exhibit 2.

26.     Because the termination of Mr. Marsh's employment was without cause, Mr. Marsh is entitled to receive the Salary Continuation Benefit.

27.     The last payment Mr. Marsh received from the Company was on April 25, 2008. In breach of its obligations, the Company failed to make the remaining nineteen Salary Continuation Benefit payments owed to Mr. Marsh.

28.     Under the terms of Section 7.4 of the Employment Agreement, Mr. Marsh is entitled to Salary Continuation Benefits in the amount of at least $2,171,261.48, which is past due.

29.     Section 11.1 of the Employment Agreement provides that "[a]ll of [Mr. Marsh's] costs and expenses of litigation . . . , including attorneys fees, shall be borne by the Company and paid as incurred, whether or not [Mr. Marsh] prevails in the litigation . . . ."

30.     Section 12.7 of the Employment Agreement provides:

> The Company's obligation to make the payments and the arrangements and benefits provided for or referred to herein shall be absolute and unconditional, and shall not be affected by any circumstances, including, without limitation, any offset, counterclaim, recoupment, defense or other right which the Company may have against [Mr. Marsh] or anyone else. All amounts payable by the Company hereunder shall be paid without notice or demand. Each and every payment made hereunder by the Company shall be final, and the Company shall not seek to recover all or any part of such payment from [Mr. Marsh] or from whosoever may be entitled thereto, for any reasons whatsoever.

### COUNT I – VIOLATION OF 29 U.S.C. § 1132(a)(1)
### AGAINST MARSH SUPERMARKETS AND THE EMPLOYMENT AGREEMENT
### BY AND BETWEEN DON E. MARSH AND MARSH SUPERMARKETS, INC.

31.     Mr. Marsh realleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 30 of his counterclaim and third-party Complaint.

32.     The Company has breached the Employment Agreement such that the entire amount of the remaining Salary Continuation Benefits is past due and immediately payable.

33.     The total amount of Salary Continuation Benefits due and owing Mr. Marsh pursuant to the Employment Agreement is at least $2,171,261.48.

34.     Under the terms of Section 7.4 of the Employment Agreement, the Company must provide Mr. Marsh with the following additional benefits: (1) Lifetime Medical Benefits for he and his spouse (which has since been cashed out by Mr. Marsh); (2) all premiums due on split-dollar life insurance policies in effect on the life of Mr. Marsh for three years from the termination date (after which time the Company shall distribute such policies to Mr. Marsh without requiring Mr. Marsh to repay any premiums paid by the Company); and (3) three years

of grossed-up bonus to reimburse Mr. Marsh for any taxes payable by him with respect to his portion of premiums and bonus. Defendants have failed and refused to comply with these obligations.

35.     Because of the Company's failure and refusal to pay Mr. Marsh all of the benefits to which he is entitled pursuant to the Employment Agreement, Mr. Marsh has incurred and continues to incur the costs and expenses of litigation, including attorneys fees. Pursuant to Section 11.1 of the Agreement, Mr. Marsh is entitled to recover all of his costs and expenses of litigation, including his attorneys fees, as incurred, regardless of whether or not he prevails in the litigation, but the Company has not paid those amounts as incurred.

36.     Defendants have violated ERISA by refusing to pay Mr. Marsh all of the benefits to which he is entitled under the Employment Agreement.

37.     Because the Employment Agreement did not establish any administrative remedies, Mr. Marsh had no obligation to exhaust any such remedies.

### COUNT II – BREACH OF CONTRACT
### AGAINST MARSH SUPERMARKETS, INC.

38.     Mr. Marsh realleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 37 of the counterclaim and third-party complaint.

39.     The Employment Agreement constitutes a contract between Mr. Marsh and the Company.

40.     The Company breached its obligations to Mr. Marsh under the Employment Agreement.

41.     As a result of the Company's breach, Mr. Marsh has suffered monetary damages, including the costs and expenses of litigation.

## COUNT III – VIOLATION OF INDIANA WAGE ACT
## AGAINST MARSH SUPERMARKETS, INC.

42.　　Mr. Marsh realleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 41 of the counterclaim and third-party complaint.

43.　　The Salary Continuation Benefit is a form of deferred payment of compensation in which the entitlement to the payment is vested upon the termination of Mr. Marsh's employment, but the timing of the payment is set pursuant to an established schedule.

44.　　The Company's failure to pay to Mr. Marsh the amounts to which he is entitled under the Employment Agreement violates the Indiana Wage Act, Indiana Code §§ 22-2-9-1 *et seq.*

45.　　As a result of the Company's failures, Mr. Marsh is entitled to liquidated damages in an amount not to exceed three times the amount of wages due, his attorneys fees, and all other damages guaranteed by Indiana Code § 22-2-5-2.

46.　　Mr. Marsh has received an authorization from the Indiana Department of Labor to bring this claim by way of private attorneys, thereby satisfying all conditions precedent to bringing this claim in this Court.

## COUNT IV – CIVIL DAMAGES FOR FRAUDULENT FILING
## PURSUANT TO 26 U.S.C. § 7434 AGAINST MARSH SUPERMARKETS, INC.

47.　　Mr. Marsh realleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 46 of the counterclaim and third-party Complaint.

48.　　In a letter dated March 20, 2009, the Company informed Mr. Marsh that it submitted 1099-MISC forms for tax years 2004, 2005, and 2006 to "reflect our determination that certain expenditures of funds of Marsh Supermarkets, Inc. by you or on your behalf were treated as reimbursable expenses [that] constitute income to you."  A copy of the letter and the 1009-MISC forms (with Mr. Marsh's social security number redacted) are attached as Exhibit 3.

49.     The expenditures upon which the Company relies in support of this 1099-MISC include business expenses incurred by or on behalf of the Company that should not constitute, nor have been attributed as, income to Mr. Marsh.

50.     Additionally, the Company wrongly issued Form 1099-MISC to Mr. Marsh because no nonemployee compensation was paid to Mr. Marsh.

51.     The Company knowingly, willfully, and maliciously filed these fraudulent information returns with respect to payments purported to have been made to Mr. Marsh in violation of 26 U.S.C. § 7434.

52.     Mr. Marsh has been damaged as a result of the Company's conduct.

## COUNT V – NEGLIGENCE
## AGAINST MARSH SUPERMARKETS, INC.

53.     Mr. Marsh realleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 52 of the counterclaim and third-party complaint.

54.     The Company owed Mr. Marsh a duty to administer its expense reimbursement plan in a manner consistent with the requirements for qualification as an accountable plan under the Internal Revenue Code.

55.     To the extent it failed to so administer the expense reimbursement plan, the Company breached its duty to Mr. Marsh.

56.     Mr. Marsh has been damaged by the Company's breach of that duty and has incurred additional tax liability resulting from the imputation of additional taxable income to Mr. Marsh.

## COUNT VI – REQUEST FOR
## DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201

57.    Mr. Marsh realleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 56 of the counterclaim and third-party Complaint.

58.    Under the terms of Section 11.1 of the Employment Agreement, "All of [Mr. Marsh's] costs and expenses of litigation . . . , including attorneys fees, shall be borne by the Company and paid as incurred, whether or not [Mr. Marsh] prevails in the litigation . . . ."

59.    Because of the Company's failure and refusal to pay Mr. Marsh all of the benefits to which he is entitled pursuant to the Employment Agreement, Mr. Marsh has incurred and continues to incur the costs and expenses of litigation, including attorneys fees. Pursuant to Section 11.1, Mr. Marsh is entitled to recover all of his costs and expenses of litigation, including his attorneys fees, as incurred, regardless of whether or not he prevails in the litigation.

60.    Consequently, Mr. Marsh seeks a declaration from this Court pursuant to 28 U.S.C. § 2201 that the Company must compensate Mr. Marsh for all of the costs and expenses, including attorneys fees, that he incurs in this litigation, and that this Court establish a payment system for compensating Mr. Marsh for his costs and expenses, including attorneys fees, as incurred during this litigation.

## PRAYER FOR RELIEF

WHEREFORE, without limiting the relief to which he is otherwise entitled, Mr. Marsh respectfully requests that this Court:

A.    Award Mr. Marsh all damages proven and allowable by law under his claims;

B.    Award Mr. Marsh all interest allowable by law, his costs, and his attorneys fees;

C.    Declare that the Company is required to compensate Mr. Marsh for all of his costs and expenses of litigation, including his attorneys fees, as they are incurred; and

D.      Grant such further and additional relief as the Court deems just and proper.

## JURY DEMAND

Defendant Don E. Marsh requests trial by jury pursuant to Trial Rule 38(B) of the Federal

Rules of Civil Procedure for all claims so triable.

Respectfully submitted,


s/ Andrew M. McNeil
Andrew M. McNeil (#19140-49)
W. James Hamilton (#20155-49)
Kellie M. Barr (#26423-53)

BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, Indiana  46204
(317) 684-5000; (317) 684-5173 Fax
AMcNeil@boselaw.com
JHamilton@boselaw.com
KBarr@boselaw.com

Attorneys for Defendant, Don E. Marsh

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2009, a copy of the foregoing "Don E. Marsh's Answer, Counterclaim, and Third-Party Complaint to Marsh Supermarkets' First Amended Complaint" was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

David K. Herzog, Esq.
Ryan M. Hurley, Esq.
Christopher W. Smith, Esq.
Baker & Daniels LLP
300 North Meridian Street, Suite 2700
Indianapolis, IN  46204
david.herzog@bakerd.com
ryan.hurley@bakerd.com
christopher.smith@bakerd.com


s/ Andrew M. McNeil_____
Andrew M. McNeil


1529428_1