UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARSH SUPERMARKETS, INC., ) | |
| ) | |
|     Plaintiff/Counterclaim-Defendant, ) | |
| ) | |
| v. ) | Cause No. 1:09-CV-0458-DFH-DML |
| ) | |
| DON E. MARSH ) | |
| ) | |
|     Defendant/Counterclaim-Plaintiff. ) | |
| ) | |
| v. ) | |
| ) | |
| EMPLOYMENT AGREEMENT BY AND ) | |
| BETWEEN DON E. MARSH AND ) | |
| MARSH SUPERMARKETS, INC. ) | |
| DATED AUGUST 3, 1999, AS ) | |
| AMENDED ) | |
| JANUARY 1, 2005 and ) | |
| DECEMBER 30, 2005, ) | |
| ) | |
|     Third-Party Defendant. ) | |

**ANSWER TO DON E. MARSH'S**
**FIRST AMENDED COUNTERCLAIM AND THIRD-PARTY COMPLAINT**

Plaintiff/counterclaim-defendant Marsh Supermarkets, Inc. and Third-Party Defendant Employment Agreement by and between Don E. Marsh and Marsh Supermarkets, Inc. dated August 3, 1999, as amended on December 28, 2005 and September 21, 2006[1] (collectively, "Marsh Supermarkets" or "Company"), for their answer to Don E. Marsh's First Amended Counterclaim and Third-Party Complaint, state as follows:

---

[1] In the caption to his First Amended Answer, Counterclaim, and Third-Party Complaint, Don E. Marsh ("Don Marsh") references the dates that the amendments to the Employment Agreements became effective. The amendments were signed on December 28, 2005 and September 21, 2006.

## Common Allegations

1. Don E. Marsh ("Mr. Marsh") was chief executive officer of Marsh Supermarkets ("the Company") from approximately 1968 until October 13, 2006.

ANSWER: Marsh Supermarkets admits the allegations in Paragraph 1.

2. The Company is an Indiana corporation with its principal place of business in Indianapolis, Indiana.

ANSWER: Marsh Supermarkets admits the allegations in Paragraph 2.

3. This Court has federal question jurisdiction over Mr. Marsh's Counterclaim and Third-Party Complaint under the Employee Retirement Income Security Act ("ERISA") and also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

ANSWER: Marsh Supermarkets admits that the Court has federal question jurisdiction over Counts I and IV and that the Court may exercise supplemental jurisdiction over Counts II, III, V, and VI.

## Mr. Marsh's Value to the Company

4. Mr. Marsh was and is recognized internationally as a leader and innovator in the grocery store industry. For example, during his tenure at the Company, Mr. Marsh served as the president of the International Centre for Food Trade and Industry ("CIES"), which is headquartered in Paris, France. This organization does research, education and training, and studies marketing, information systems and warehousing in the retail and wholesale food distribution industry and serves as a catalyst between retailers and manufacturers and looks for trends on a global basis.

ANSWER: Marsh Supermarkets is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first and third sentences of

Paragraph 4.  Marsh Supermarkets admits that Mr. Marsh was Chairman of CIES from 1989 until 1992.  Marsh Supermarkets denies any remaining allegations in Paragraph 4.

5. Mr. Marsh's involvement with CIES was well-known to the Company and provided significant benefits to the Company.  Because of his involvement with CIES, and similar organizations, Mr. Marsh was able to identify innovations and advancements in grocery retailing making inroads in other countries and implement them in the Company's operations.

ANSWER:  Marsh Supermarkets denies the allegations in Paragraph 5.

6. Mr. Marsh also caused the CIES to commission what is known as the "Marsh Super Study," which was the largest, most comprehensive study ever attempted for the food industry.  The study was so significant that the trade magazine "Progressive Grocer" devoted an entire issue to reporting some of the results, which changed the industry's direction in terms of merchandising.

ANSWER:  Marsh Supermarkets is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6.

7. Mr. Marsh's innovation in the industry is legendary.  For example, a Marsh grocery store in Troy, Ohio was the first grocery store in the United States to utilize the now-ubiquitous UPC scanner.

ANSWER:  Marsh Supermarkets denies the allegations in the first sentence of Paragraph 7.  Marsh Supermarkets admits that one of its stores in Troy, Ohio was the first grocery store in the United States to use a UPC scanner.  Marsh Supermarkets denies any remaining allegations in Paragraph 7.

8. Moreover, under Mr. Marsh's leadership, the Company had or explored grocery or food distribution operations on at least three continents.

ANSWER: Marsh Supermarkets is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8.

9. Mr. Marsh was also the public face of the Company locally. Mr. Marsh is one of the most recognizable marketing figures in Central Indiana. Mr. Marsh's presence in the community as an ambassador for the Company provided the Company with an invaluable benefit and tremendous goodwill.

ANSWER: Marsh Supermarkets admits that Mr. Marsh was a public face of the Company. Marsh Supermarkets is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 9.

### The "E-voucher" System

10. During Mr. Marsh's tenure as president, chairman, and chief executive officer of Marsh Supermarkets, the Company utilized an "e-voucher" system for handling business expenses incurred by its executives, including its chief financial officer and general counsel.

ANSWER: Marsh Supermarkets admits that certain individuals, including Mr. Marsh, utilized an "e-voucher" system for certain expense reimbursements. Marsh Supermarkets denies the remaining allegations in Paragraph 10.

11. The e-voucher system had been in place for years before Mr. Marsh's departure from the Company in 2006.

ANSWER: Marsh Supermarkets is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11.

12. The e-voucher system traces its roots back to Mr. Marsh's father, Ermal Marsh, and was established in conjunction with the Company's outside accounting firm.

-4-

ANSWER: Marsh Supermarkets is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12.

13. The e-voucher system was established as an "accountable plan" such that reimbursements through the plan were not chargeable to the employee as income.

ANSWER: Marsh Supermarkets is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13.

14. The Company's financial records were audited every year by an outside accounting firm.

ANSWER: Marsh Supermarkets admits that an outside accounting firm conducted an audit of the Company every year. Marsh Supermarkets is without knowledge or information sufficient to form a belief as to the truth of the allegation that all financial records were audited by an outside accounting firm each year. Marsh Supermarkets denies the remaining allegations in Paragraph 14.

15. These audits included, or should have included, the e-voucher system and the Company's petty cash account.

ANSWER: Marsh Supermarkets is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15.

16. The outside accounting firm never raised any concerns with respect to the e-voucher system or the Company's petty cash account.

ANSWER: Marsh Supermarkets is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16.

17. Any allegation by the Company that it was not aware of the e-voucher system or Mr. Marsh's use of that system until 2006 is false.

ANSWER: Marsh Supermarkets denies the allegations in Paragraph 17.

**Mr. Marsh's Employment Agreement**

18. On information and belief, between 1999 and 2002, the Company was concerned that a possible corporate takeover might cause key employees to seek other job opportunities. To retain these employees, the Company executed employment agreements (collectively, the "Plan") with certain high ranking employees, including Mr. Marsh.

ANSWER: Marsh Supermarkets admits that the salary continuation provisions and health and life insurance provisions were part of an ERISA plan, denies that the other terms of the employment agreements were part of an ERISA plan, and admits the remaining allegations in Paragraph 18.

19. Putting the Plan into effect required an ongoing administrative "scheme" as defined by ERISA because the Company might have to determine its employees' eligibility for and level of benefits on multiple occasions by analyzing each employee's particular circumstances in light of the applicable criteria.

ANSWER: Marsh Supermarkets admits that part, but not all, of the employment agreements requires an ongoing administrative scheme and provides benefits that constitutes an ERISA-governed employee benefit plan. Marsh Supermarkets denies the remaining allegations in Paragraph 19.

20. The Plan provides that certain employees of the Company are entitled to severance benefits under certain circumstances and is governed by ERISA. 29 U.S.C. § 1001 *et seq.* The Company is the Administrator for the Plan.

ANSWER: Marsh Supermarkets admits that the portion of the employment agreements that constitutes an employee benefit plan provides that certain employees of Marsh

Supermarkets are entitled to severance benefits under certain circumstances and is governed by ERISA, 29 U.S.C. § 1001 *et seq.*, and that Marsh Supermarkets is the plan administrator with respect to that plan. Marsh Supermarkets denies any remaining allegations in Paragraph 20.

21. Mr. Marsh and the Company entered into an Employment Agreement dated August 3, 1999, which was subsequently amended on December 29, 2005 and September 21, 2006 (collectively, the "Employment Agreement"). A copy of the Employment Agreement is attached hereto as Exhibit 1.

ANSWER: Marsh Supermarkets admits the allegations in Paragraph 21, except Marsh Supermarkets denies that the date of the first Amendment to Employment Agreement was December 29, 2005.

22. The first paragraph of Section 7.4 of the Employment Agreement provides that, "At any time during the Term, the Board of Directors of the Company may terminate this Agreement without Cause by giving [Mr. Marsh] a Notice of Termination, and [Mr. Marsh's] employment by the Company shall terminate at the close of business on the last day of the Notice Period."

ANSWER: Marsh Supermarkets admits that Paragraph 22 contains a partial quotation from Section 7.4 of the Employment Agreement. Marsh Supermarkets denies any remaining allegations in Paragraph 22.

23. The third paragraph of Section 7.4 of the Employment Agreement provides, in pertinent part:

> The Company shall pay to [Mr. Marsh] the Salary Continuation Benefit over a period equal to three (3) years from the termination date. (By way of example, if [Mr. Marsh's] annual Salary Continuation Benefit were equal to $1,500,000, then the Company would pay [Mr. Marsh] three (3) times that amount, or $4,500,000, payable monthly at the rate of $125,000 per month).

ANSWER: Marsh Supermarkets admits that Paragraph 23 contains a partial quotation from Section 7.4 of the Employment Agreement. Marsh Supermarkets denies any remaining allegations in Paragraph 23.

24. Section 8.7 of the Employment Agreement defines the Salary Continuation Benefit as:

> [A]n annual amount equal to the sum of (a) the highest annualized Base Salary of [Mr. Marsh] in effect at any time within five (5) years prior to the date of termination; plus (b) the largest of the annual bonuses paid to [Mr. Marsh] for the ten (10) years preceding the termination date. An amount equal to one-twelfth of the salary (sic) Continuation Benefit shall be paid to [Mr. Marsh] or his designee on the first day of each calendar month.

ANSWER: Marsh Supermarkets admits that Paragraph 24 contains a partial quotation from Section 8.7 of the Employment Agreement. Marsh Supermarkets denies any remaining allegations in Paragraph 24.

25. On or about September 28, 2006, the Company transmitted a Notice of Termination of Employment to Mr. Marsh, notifying him that his employment was being terminated without cause effective October 13, 2006, pursuant to Section 7.4 of the Employment Agreement. A copy of the Notice of Termination of Employment is attached hereto as Exhibit 2.

ANSWER: Marsh Supermarkets admits the allegations in Paragraph 25.

26. Because the termination of Mr. Marsh's employment was without cause, Mr. Marsh is entitled to receive the Salary Continuation Benefit.

ANSWER: Marsh Supermarkets denies the allegations in Paragraph 26.

27. The last payment Mr. Marsh received from the Company was on April 25, 2008. In breach of its obligations, the Company has failed to make the remaining nineteen Salary Continuation Benefit payments owed to Mr. Marsh.

ANSWER: Marsh Supermarkets admits the allegations in the first sentence of Paragraph 27. Marsh Supermarkets admits that it has not made any Salary Continuation Benefit payments to Don Marsh since April 25, 2008, but denies that Don Marsh is entitled to any Salary Continuation Benefit payments, including those Salary Continuation Benefit payments Marsh Supermarkets made to him. Marsh Supermarkets denies the remaining allegations in Paragraph 27.

28. Under the terms of Section 7.4 of the Employment Agreement, Mr. Marsh is entitled to Salary Continuation Benefits in the amount of at least $2,171,261.48, which is past due.

ANSWER: Marsh Supermarkets denies the allegations in Paragraph 28.

29. Section 11.1 of the Employment Agreement provides that "[a]ll of [Mr. Marsh's] costs and expenses of litigation . . . , including attorneys (sic) fees, shall be borne by the Company and paid as incurred, whether or not [Mr. Marsh] prevails in the litigation . . . ."

ANSWER: Marsh Supermarkets admits that Paragraph 29 contains a partial quotation from Section 11.1 of the Employment Agreement. Marsh Supermarkets denies any remaining allegations in Paragraph 29.

30. Section 12.7 of the Employment Agreement provides:

> The Company's obligation to make the payments and the arrangements and benefits provided for or referred to herein shall be absolute and unconditional, and shall not be affected by any circumstances, including, without limitation, any offset, counterclaim, recoupment, defense or other right which the Company may have against [Mr. Marsh] or anyone else. All amounts payable by the Company hereunder shall be paid without notice or demand. Each and every payment made hereunder by the Company shall be final, and the Company shall not seek to recover all or any part of such payment from [Mr. Marsh] or from whosoever may be entitled thereto, for any reasons whatsoever.

ANSWER: Marsh Supermarkets admits that Paragraph 30 contains a partial quotation from Section 12.7 of the Employment Agreement. Marsh Supermarkets denies any remaining allegations in Paragraph 30.

**COUNT I: VIOLATION OF 29 U.S.C. § 1132(a)(1) AGAINST MARSH SUPERMARKETS AND THE EMPLOYMENT AGREEMENT BY AND BETWEEN DON E. MARSH AND MARSH SUPERMARKETS, INC.**

31. Mr. Marsh realleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 30 of his counterclaim and third-party complaint.

ANSWER: Marsh Supermarkets incorporates by reference its responses to Paragraphs 1 through 30.

32. The Company has breached the Employment Agreement such that the entire amount of the remaining Salary Continuation Benefits is past due and immediately payable.

ANSWER: Marsh Supermarkets denies the allegations in Paragraph 32.

33. The total amount of Salary Continuation Benefits due and owing Mr. Marsh pursuant to the Employment Agreement is at least $2,171,261.48.

ANSWER: Marsh Supermarkets denies the allegations in Paragraph 33.

34. Under the terms of Section 7.4 of the Employment Agreement, the Company must provide Mr. Marsh with the following additional benefits: (1) Lifetime Medical Benefits for he and his spouse (which has since been cashed out by Mr. Marsh); (2) all premiums due on split-dollar life insurance policies in effect on the life of Mr. Marsh for three years from the termination date (after which time the Company shall distribute such policies to Mr. Marsh without requiring Mr. Marsh to repay any premiums paid by the Company); and (3) three years of grossed-up bonus to reimburse Mr. Marsh for any taxes payable by him with respect to his

portion of premiums and bonus. Defendants have failed and refused to comply with these obligations.

    ANSWER: Marsh Supermarkets denies the allegations in Paragraph 34.

  35. Because of the Company's failure and refusal to pay Mr. Marsh all of the benefits to which he is entitled pursuant to the Employment Agreement, Mr. Marsh has incurred and continues to incur the costs and expenses of litigation, including attorneys fees. Pursuant to Section 11.1 of the Agreement, Mr. Marsh is entitled to recover all of his costs and expenses of litigation, including his attorneys fees, as incurred, regardless of whether or not he prevails in the litigation, but the Company has not paid those amounts as incurred.

    ANSWER: Marsh Supermarkets admits that it has not paid Don Marsh's costs and expenses of litigation, including his attorneys' fees, denies that Don Marsh is entitled to be paid his costs and expenses of litigation, including his attorneys' fees, and denies the remaining allegations in Paragraph 35.

  36. Defendants have violated ERISA by refusing to pay Mr. Marsh all of the benefits to which he is entitled under the Employment Agreement.

    ANSWER: Marsh Supermarkets denies the allegations in Paragraph 36.

  37. Because the Employment Agreement did not establish any administrative remedies, Mr. Marsh had no obligation to exhaust any such remedies.

    ANSWER: Marsh Supermarkets admits the allegations in Paragraph 37.

**COUNT II – BREACH OF CONTRACT
AGAINST MARSH SUPERMARKETS, INC.**

  38. Mr. Marsh realleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 37 of the counterclaim and third-party complaint.

-11-

ANSWER: Marsh Supermarkets incorporates by reference its responses to Paragraphs 1 through 37.

39. The Employment Agreement constitutes a contract between Mr. Marsh and the Company.

ANSWER: Marsh Supermarkets admits the allegations in Paragraph 39.

40. The Company breached its obligations to Mr. Marsh under the Employment Agreement.

ANSWER: Marsh Supermarkets denies the allegations in Paragraph 40.

41. As a result of the Company's breach, Mr. Marsh has suffered monetary damages, including the costs and expenses of litigation.

ANSWER: Marsh Supermarkets denies the allegations in Paragraph 41.

## COUNT III – VIOLATION OF INDIANA WAGE ACT AGAINST MARSH SUPERMARKETS, INC.

42. Mr. Marsh realleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 41 of the counterclaim and third-party complaint.

ANSWER: Marsh Supermarkets incorporates by reference its responses to Paragraphs 1 through 41.

43. The Salary Continuation Benefit is a form of deferred payment of compensation in which the entitlement to the payment is vested upon the termination of Mr. Marsh's employment, but the timing of the payment is set pursuant to an established schedule.

ANSWER: Marsh Supermarkets denies the allegations in Paragraph 43.

44. The Company's failure to pay to Mr. Marsh the amounts to which he is entitled under the Employment Agreement violates the Indiana Wage Act, Indiana Code §§ 22-2-9-1 *et seq.*

ANSWER: Marsh Supermarkets denies the allegations in Paragraph 44.

45. As a result of the Company's failures, Mr. Marsh is entitled to liquidated damages in an amount not to exceed three times the amount of wages due, his attorneys fees, and all other damages guaranteed by Indiana Code § 22-2-5-2.

ANSWER: Marsh Supermarkets denies the allegations in Paragraph 45 because, among other reasons, as a matter of law, ERISA § 502(a), 29 U.S.C. § 1132(a), provides the exclusive remedies related to the ERISA-governed Salary Continuation Benefit.

46. Mr. Marsh has received an authorization from the Indiana Department of Labor to bring this claim by way of private attorneys, thereby satisfying all conditions precedent to bringing this claim in this Court.

ANSWER: Marsh Supermarkets admits that Don Marsh requested and received an authorization from the Indiana Department of Labor to bring this claim. Marsh Supermarkets denies any remaining allegations in Paragraph 46.

### COUNT IV- CIVIL DAMAGES FOR FRAUDULENT FILING PURSUANT TO 26 U.S.C. § 7434 AGAINST MARSH SUPERMARKETS, INC.

47. Mr. Marsh realleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 46 of the counterclaim and third-party complaint.

ANSWER: Marsh Supermarkets incorporates by reference its responses to Paragraphs 1 through 46.

48. In a letter dated March 20, 2009, the Company informed Mr. Marsh that it submitted 1099-MISC forms for tax years 2004, 2005, and 2006 to "reflect our determination that certain expenditures of funds of Marsh Supermarkets, Inc. by you or on your behalf were treated as reimbursable expenses [that] constitute income to you." A copy of the letter and the

1009-MISC (sic) forms (with Mr. Marsh's social security number redacted) are attached as Exhibit 3.

ANSWER: Marsh Supermarkets admits the allegations in Paragraph 48.

49. The expenditures upon which the Company relies in support of this 1099-MISC include business expenses incurred by or on behalf of the Company that should not constitute, nor have been attributed as, income to Mr. Marsh.

ANSWER: Marsh Supermarkets denies the allegations in Paragraph 49.

50. Additionally, the Company wrongly issued Form 1099-MISC to Mr. Marsh because no nonemployee compensation was paid to Mr. Marsh.

ANSWER: Marsh Supermarkets denies the allegations in Paragraph 50.

51. The Company knowingly, willfully, and maliciously filed these fraudulent information returns with respect to payments purported to have been made to Mr. Marsh in violation of 26 U.S.C. § 7434.

ANSWER: Marsh Supermarkets denies the allegations in Paragraph 51.

52. Mr. Marsh has been damaged as a result of the Company's conduct.

ANSWER: Marsh Supermarkets denies the allegations in Paragraph 52.

## COUNT V – NEGLIGENCE
## AGAINST MARSH SUPERMARKETS, INC.

53. Mr. Marsh realleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 52 of the counterclaim and third-party complaint.

ANSWER: Marsh Supermarkets incorporates by reference its responses to Paragraphs 1 through 52.

54. The Company owed Mr. Marsh a duty to administer its expense reimbursement plan in a manner consistent with the requirements for qualification as an accountable plan under the Internal Revenue Code.

ANSWER: Marsh Supermarkets denies the allegations in Paragraph 54.

55. To the extent it failed to so administer the expense reimbursement plan, the Company breached its duty to Mr. Marsh.

ANSWER: Marsh Supermarkets denies the allegations in Paragraph 55.

56. Mr. Marsh has been damaged by the Company's breach of that duty and has incurred additional tax liability from the imputation of additional taxable income to Mr. Marsh.

ANSWER: Marsh Supermarkets denies the allegations in Paragraph 56.

**COUNT VI – REQUEST FOR
DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201**

57. Mr. Marsh realleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 56 of the counterclaim and third-party complaint.

ANSWER: Marsh Supermarkets incorporates by reference its responses to Paragraphs 1 through 57.

58. Under the terms of Section 11.1 of the Employment Agreement, "All of [Mr. Marsh's] costs and expenses of litigation . . . , including attorneys fees, shall be borne by the Company and paid as incurred, whether or not [Mr. Marsh] prevails in the litigation . . . ."

ANSWER: Marsh Supermarkets denies the allegations in Paragraph 58.

59. Because of the Company's failure and refusal to pay Mr. Marsh all of the benefits to which he is entitled pursuant to the Employment Agreement, Mr. Marsh has incurred and continues to incur the costs and expenses of litigation, including attorneys fees. Pursuant to

Section 11.1, Mr. Marsh is entitled to recover all of his costs and expenses of litigation, including his attorneys fees, as incurred, regardless of whether or not he prevails in the litigation.

ANSWER: Marsh Supermarkets denies the allegations in Paragraph 59.

60. Consequently, Mr. Marsh seeks a declaration from this Court pursuant to 28 U.S.C. § 2201 that the Company must compensate Mr. Marsh for all of the costs and expenses, including attorneys fees, that he incurs in this litigation, and that this Court establish a payment system for compensating Mr. Marsh for his costs and expenses, including attorneys fees, as incurred during this litigation.

ANSWER: Marsh Supermarkets admits that Don Marsh has requested declaratory relief from the Court, but denies that Don Marsh is entitled to any of the relief he requests.

**AFFIRMATIVE DEFENSES**

1. Don Marsh unjustly received benefits under the Employment Agreement to which he was not entitled, and thus even if any of his claims were legitimate, such claims would be barred by payment to the extent of the benefits already paid.

2. Don Marsh's claims are barred by his material breaches of the Employment Agreement.

3. Don Marsh's claims are barred by the doctrines of setoff and recoupment. In addition to providing Marsh Supermarkets with a right to relief for breach of employment agreement, fraud and deceit, and under section 502(a)(3)(B)(ii) of ERISA, Don Marsh's conduct as alleged in paragraphs 1 through 45 of the Company's First Amended Complaint, which allegations are incorporated herein by reference, was in breach of fiduciary duties he owed to Marsh Supermarkets, constituted tortious conversion, constituted criminal conversion of Marsh

Supermarkets' property under Indiana Code § 35-43-4-3, constituted theft of Marsh Supermarkets' property under Indiana Code § 35-43-4-2, and constituted deception under Indiana Code § 35-43-5-3.  Because Marsh Supermarkets suffered pecuniary losses as a result of Don Marsh's violations of Indiana Code § 35-43, it is entitled to setoff or recoup three times its actual damages, the costs of this action, and reasonable attorneys' fees pursuant to Indiana Code §34-24-3-1.

4. Because Marsh Supermarkets was entitled to terminate Don Marsh for "Cause" and would have done so but for Don Marsh's fraudulent concealment of his behavior and his control of the Company, Marsh Supermarkets owes Don Marsh nothing under the Employment Agreement.

5. None of the disputes that Don Marsh claims to have with Marsh Supermarkets is a "good faith dispute or controversy," and, therefore, Marsh Supermarkets has no obligation to pay Don Marsh's costs or expenses, including attorneys' fees, in connection with such disputes.

6. The provision in Section 11.1 that provides for the Company to pay for Don Marsh's litigation expenses is void as a matter of public policy.

7. Don Marsh is not entitled to recover any costs or expenses, including attorneys' fees, incurred defending against Marsh Supermarkets' claims.

8. Even if Don Marsh were entitled to recover any costs or expenses, including attorneys' fees, his recovery would be limited to reasonable amounts reasonably incurred and be subject to the Company's rights of setoff and recoupment.

-17-

9. Section 12.7 of the Employment Agreement is void as a matter of public policy with respect to all payments that Don Marsh received with unclean hands or otherwise on account of his own wrongdoing or concealment thereof.

10. Don Marsh's claim for negligence is barred by the economic loss doctrine and his contributory negligence.

11. Don Marsh's claims are barred by laches, waiver and estoppel.

12. Don Marsh failed to mitigate any damages he allegedly suffered.

13. Don Marsh's claim for fraudulent filing is barred because he failed to plead fraud with particularity.

14. Don Marsh's claims are barred because Marsh Supermarkets did not proximately cause any damages he allegedly suffered.

15. Don Marsh's claims are barred by the doctrine of unclean hands.

16. ERISA preempts all of Don Marsh's state-law claims that relate to the portion of his Employment Agreement that is an ERISA-governed employee benefit plan.

17. Don Marsh has no right to a jury trial on any claim that is governed by ERISA.

WHEREFORE, Marsh Supermarkets requests that Don Marsh take nothing by his counterclaims and third-party complaint, that the Court enter judgment in favor of Marsh Supermarkets, and that the Court award to Marsh Supermarkets its attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g).

BAKER & DANIELS LLP

By: /s/ Ryan M. Hurley

David K. Herzog
Ryan M. Hurley
Christopher W. Smith
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204-1782
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
david.herzog@bakerd.com
ryan.hurley@bakerd.com
christopher.smith@bakerd.com

*Attorneys for Plaintiff/Counterclaim-Defendant Marsh Supermarkets, Inc. and Third-Party Defendant Employment Agreement by and between Don E. Marsh and Marsh Supermarkets, Inc. dated August 3, 1999, as amended December 28, 2005 and September 21, 2006*

-19-

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2009, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

>Andrew M. McNeil
>W. James Hamilton
>Kellie M. Johnson
>BOSE McKINNEY & EVANS LLP
>111 Monument Circle, Suite 2700
>Indianapolis, IN 46204
>AMcNeil@boselaw.com
>JHamilton@boselaw.com
>KJohnson@boselaw.com

>/s/ Ryan M. Hurley