UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARSH SUPERMARKETS, INC., )<br>)<br>    Plaintiff/Counterclaim- )<br>    Defendant )<br>)<br>  vs. )<br>)<br>DON E. MARSH, )<br>)<br>    Defendant/Counterclaim- )<br>    Plaintiff/Third-Party Plaintiff )<br>)<br>  vs. )<br>)<br>EMPLOYMENT AGREEMENT BY AND )<br>BETWEEN DON E. MARSH AND )<br>MARSH SUPERMARKETS, INC. )<br>DATED AUGUST 3, 1999, AS AMENDED )<br>JANUARY 1, 2005 and DECEMBER 30, )<br>2005, )<br>)<br>    Third-Party Defendant )<br>) | 1:09-cv-00458-SEB-TAB |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR
PARTIAL JUDGEMENT ON THE PLEADINGS**

Defendant Don E. Marsh ("Mr. Marsh") seeks partial judgment on the pleadings in response to Plaintiff Marsh Supermarkets, Inc.'s ("Company") Amended Complaint as well as his Amended Counterclaim. Mr. Marsh seeks judgment on two counts of the Amended Complaint: Count I, which asserts a claim for Breach of the Employment Agreement, and Count III, which asserts a claim under ERISA § 502(a)(3)(B)(ii). Mr.

1

Marsh further seeks partial judgment with respect to two counts contained in the Amended Counterclaim: Count I, which asserts violations of 29 U.S.C. § 1132(a)(1), and Count VI, which requests a Declaratory Judgment pursuant to 28 U.S.C. § 2201.  Generally, Mr. Marsh contends regarding the Counterclaim that the Company has failed to state a claim, while the Company maintains that its well-pleaded complaint adequately supports the relief it seeks.  For the reasons detailed below, Mr. Marsh's Motion for Partial Judgment on the Pleadings is G<u>RANTED in </u>part and DE<u>NIED in </u>part.

### *Background*

Mr. Marsh entered into an Employment Agreement with Marsh Supermarkets, a regional grocery chain headquartered in Indianapolis, Indiana, on August 3, 1999.  (Am. Countercl. ¶ 21; Ans. to Am. Countercl. ¶ 21.)  Pursuant to that Agreement, Mr. Marsh served as the Chairman and Chief Executive Officer ("CEO") of Marsh Supermarkets until late 2006.  (Am. Compl. ¶ 1.)  In September 2006, Mr. Marsh received notice of termination of his employment "without cause" pursuant to § 7.4 of the Employment Agreement, effective October 13, 2006.  (Def.'s Ans. Ex. 2.)

Under § 7.4 of the Employment Agreement between Mr. Marsh and the Company, "[a]t any time during the [t]erm, the Board of Directors of the Company may terminate this agreement without [c]ause by giving the Executive a Notice of Termination." (Am. Compl. Ex. 1.)  That provision further provides that:

Within five business days after such termination date, the Company shall pay to the

> Executive (a) that portion of his Base Salary which shall have been earned through the termination date and (b) a bonus in an amount determined by multiplying the bonus or other incentive or conditional cash compensation received by the Executive with respect to or during the Company's last completed fiscal year by a fraction, the numerator of which is the number of days elapsed in the Company's current fiscal year through the termination date and the denominator of which is 365. The Company shall pay to the Executive the Salary Continuation Benefit[1] ("Benefit") over a period equal to three years from the termination date. The Company shall also pay the Executive the amount of $156,000 in lieu of providing continued term life insurance coverage at the same coverage levels that are in effect as of the termination date . . . The Company shall provide the Executive and his spouse with Lifetime Medical Benefits. The Company shall continue to pay all premiums due on the split-dollar life insurance policies in effect on the life of the Executive for three years from the termination date after which time the Company shall distribute such policies to the Executive without requiring the Executive to repay any premiums paid by the Company. The company shall also pay to Executive for each of three years a grossed up bonus to reimburse Executive for any taxes payable by him with respect to his portion of the premiums and bonus.

(Id.) Mr. Marsh received the Salary Continuation Benefit payments provided for in this section of the Agreement from the Company until April 25, 2008, when the Company admits it stopped making such payments to Mr. Marsh. (Ans. to Am. Countercl. ¶ 27.)

Mr. Marsh contends that he is entitled to receive the remainder of the Benefit owed to him for termination "without cause" as expressed in § 7.4 of the Employment Agreement in the amount of at least $2,171,261.48. (Am. Countercl. ¶¶ 26, 28.) The Company argues that despite the stipulations of § 7.4 of the Employment Agreement, the

---

[1] "Salary Continuation Benefit" is defined under § 8.7 of the Employment Agreement as "an annual amount equal to the sum of: (a) the highest annualized Base Salary of the Executive in effect at any time within five years prior to the date of termination; plus (b) the largest of the annual bonuses paid to the Executive for the ten years preceding the termination date. An amount equal to one-twelfth of the Salary Continuation Benefit shall be paid to the Executive or his designee on the first day of each calendar month." (Am. Compl. Ex. 1).

3

Company no longer owes Mr. Marsh the remainder of his benefits.  Indeed, according to the Company, Mr. Marsh should reimburse the Company for the portion of the benefits it has already paid to Mr. Marsh because he never should have received such benefits in the first place, given his conduct that came to light only after his termination.  (Am. Compl. at 14.)  Specifically, the Company contends that Mr. Marsh engaged in fraudulent and deceitful behavior while serving as the Chairman and CEO of the Company, and that had the Company been of aware of such behavior, Mr. Marsh would have been fired "for cause" under § 7.3 of the Employment Agreement, and thus would not be entitled to any Salary Continuation Benefit.  (Am. Compl. ¶ 48.)

The Company alleges that Mr. Marsh diverted company funds and resources for his personal use while serving as Chairman and CEO of the Company.  According to the Company, Mr. Marsh charged millions of dollars in expenses to the Company using the Company's "e-voucher" system for personal expenses, including expenditures for his family and friends.  (Am. Compl. ¶ 8.)   The Company further alleges that Mr. Marsh also spent tens of thousands of dollars in "petty cash" belonging to the Company without providing any documentation for his use of that cash.  (Am. Compl. ¶ 10.)  Mr. Marsh also used the Company's jet and e-vouchers for hundreds of trips, most of which were personal trips or vacations, including an estimated 350 trips outside of the Company's geographic region from 2000 to 2006.  (Am. Compl. ¶¶ 14-16, 19-20, 22-28.)

The Company asserts that because the "e-voucher" and "petty cash" systems were outside the Company's normal accounting procedures, he was able to conceal his

behavior from the Board of Directors. (Am. Compl. ¶ 38.) The Company alleges that Mr. Marsh actively and constructively misrepresented his expenses and payments, and the Company relied upon and was deceived by those misrepresentations, causing it to incur unauthorized business expenses, which in turn, unjustly enriched Mr. Marsh. (Am. Compl. ¶¶ 53-54.) Now, the Company seeks restitution for the amount by which Mr. Marsh has been unjustly enriched through his fraud and deceit, including reimbursement of the Salary Continuation Benefit that Mr. Marsh has already received, as well as a judgment relieving the Company of its contractual duty to pay the balance of the Benefit. (Am. Compl. at 13.)

Mr. Marsh contends that § 12.7 of the Employment Agreement prohibits the Company's requested relief. Pursuant to that provision:

> The Company's obligation to make the payments and the arrangements and benefits provided for or referred to herein shall be absolute and unconditional, and shall not be affected by any circumstances, including, without limitation, any offset, [Amended] Counterclaim, recoupment, defense or other right which the Company may have against the Executive or anyone else. All amounts payable by the Company hereunder shall be paid without notice or demand. Each and every payment made hereunder by the Company shall be final, and the company shall not seek to recover all or any part of such payment from the Executive . . . for any reasons whatsoever.

(Am. Compl. Ex. 1.) Furthermore, pointing also to § 11.1 of the Employment Agreement set forth below, Mr. Marsh further contends that the Company is also responsible for his legal fees arising from this litigation:

> The Executive shall have the right and option to elect to have any good faith dispute or controversy arising under or in connection with this Agreement settled by litigation or by binding arbitration . . . All of the Executive's costs

>> and expenses of litigation or arbitration, including attorney's fees, shall be borne by the Company and paid as incurred, whether or not the Executive prevails in the litigation or arbitration.

(Id.)

Pursuant to the Motion currently before the Court, Mr. Marsh seeks judgment on Count I of the Amended Complaint, in which the Company alleges that Mr. Marsh breached the Employment Agreement through his misrepresentation and fraudulent concealment of his use of company funds, thus preventing the Company from terminating Mr. Marsh's employment "for cause." (Am. Compl. ¶ 48). Mr. Marsh also seeks judgment on Count III of the Amended Complaint, which alleges that the Company is entitled to equitable relief for Mr. Marsh's unjust enrichment pursuant to Employee Retirement Income Security Act ("ERISA") § 502(a)(3)(B)(ii). (Am. Compl. ¶ 63.)

Mr. Marsh further seeks judgment on Count I and Count VI of his Amended Counterclaim and Amended Third-Party Complaint against the Company and the Employment Agreement. Count I of the Amended Counterclaim alleges that the Company breached its fiduciary duties, in violation of 29 U.S.C. § 1132(a)(1), by not paying Mr. Marsh the benefits he is owed under the Employment Agreement, including the remainder of his Salary Continuation Benefit in the amount of at least $2,171,261.48. (Am. Countercl. ¶¶ 33, 35.) Count VI of the Amended Counterclaim seeks a declaration that the Company compensate Mr. Marsh for all of the costs and expenses, including attorney fees, arising out of this litigation, as prescribed by § 11.1 of the Employment Agreement. (Am. Countercl. ¶ 60.)

## *Discussion*

### *I.     Standard of Review*

Defendant seeks partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on the Amended Complaint and the Amended Counterclaim.  The standard of review for a motion for judgment on the pleadings is identical to that applicable to a Rule 12(b)(6) Motion to Dismiss.  United States v. Wood, 925 F.2d 1580, 1581 (7th Cir. 1991). Therefore, once a claim has been adequately stated, it may be supported by any set of facts consistent with the allegations in the Amended Complaint. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1968-69 (2007) (citing Sanjuan v. American Bd. Of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994)). Dismissal is warranted if the factual allegations, viewed in the light most favorable to the plaintiff, do not plausibly entitle the plaintiff to relief.  Bell Atlantic, 127 S.Ct. at 1968-69.  However, as the Seventh Circuit has recognized, "[I]t is not enough for a Complaint to avoid foreclosing possible bases for relief; it must suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above a speculative level.'"  E.E.O.C.  v. Concentra Health Servs., Inc., 496 F.3d 773, 777 (2007) (citing Bell Atlantic, 127 S.Ct. at 1968-69).

When determining whether judgment on the pleadings is proper, a court "may not look beyond the pleadings," Wood, 925 F.2d at 1581, and "must treat all well-pleaded allegations asserted in the Amended Complaint as true, construe the allegations liberally, and draw all reasonable inferences in the light most favorable to the plaintiff." Jackson v.

7

Arvinmeritor, Inc., 2008 WL 64528, at *1 (S.D. Ind. January 3, 2008) (Hamilton, J.).

## II.  *Count I of the Amended Complaint: Breach of Employment Agreement*

In Count I of the Amended Complaint, the Company seeks restitution for sustained and future damages resulting from Mr. Marsh's alleged breach of the Employment Agreement, as well as restitution for the amount by which Mr. Marsh was unjustly enriched, sufficient punitive damages to serve as a deterrent against similar conduct, interest, and all other appropriate relief.  (Am. Compl. at 11.)  Mr. Marsh contends that the unambiguous language of the Employment Agreement prevents the Company from obtaining such relief under § 12.7, which provides that the Company's Benefit payments to Mr. Marsh are "absolute and unconditional." (Am. Compl. Ex. A at 13, § 12.7.)  Mr. Marsh argues that the language of this provision entitles him to full receipt of Benefit payments.  (Am. Compl. Ex. A at 13, § 12.7.)   He further asserts that the Company's claims for recoupment are foreclosed by the Agreement, since "[e]ach and every payment made hereunder by the Company shall be final, and the Company shall not seek to recover all or any part of such payment from [Mr. Marsh] . . . for any reasons whatsoever."  (Id.)  Thus, Mr. Marsh contends that based on the unambiguous language of the contract which forecloses the relief requested by the Company, he is entitled to judgment on Count I of the Amended Complaint as a matter of law.

The Company contends that Mr. Marsh's motion for judgment on Count I of the Amended Complaint must be denied because Mr. Marsh's "fraudulent, deceptive

conduct" induced the Company to enter into the Employment Agreement. According to the Company's briefing, "for a period spanning several decades, Mr. Marsh hid his use of Company funds for travel and other personal purposes through the 'e-voucher' and 'petty cash' systems" (Pl.'s Br. 38.), thus entitling the Company to rescission of the contract because it would never have entered into the Employment Agreement but for the fraudulent conduct. In addition to this rescission claim, the Company contends, in the alternative, that Mr. Marsh's conduct constituted a breach of the Employment Agreement, relieving the Company of its obligation to honor the outstanding provisions and payments provided for in the Agreement. (Am. Compl. at 12.)

Typically, state law governs contract formation. However, when a contract contains an ERISA component, state law claims pertaining to that component are preempted by ERISA. ERISA governs "employee welfare benefits plans" and "employee pension plans." 29 U.S.C. § § 1003(a), 02(3). In cases "dealing with a multi-faceted employment contract . . . some facets may be governed by ERISA . . . while others may be governed by state law." Stearns v. NCR Corp, 297 F.3d 706, 710 (8th Cir. 2002). In the case at hand, the Employment Agreement is indeed a multi-faceted employment contract with some facets governed by ERISA and other facets governed by Indiana law. The Company contends that § 7.4 ("Termination without Cause") and § 8.7 ("Salary Continuation Benefit") are the only post-termination provisions in the Employment Agreement, and that § 12.7 *is not* governed by ERISA. (Pl.'s Br. 14.) However, Federal ERISA law controls the assessment of issues "relat[ing] to any employee benefit plan"

9

(29 U.S.C. § 1144(a)), which in this case clearly *does* include § 12.7, detailing the Company's payment obligations relating to § 7.4 and § 8.7.

Clearly, all components of the Employment Agreement underlying the Company's breach of contract claim by which it seeks to be relieved from its Salary Continuation Benefit payment obligations are, in fact, governed by ERISA. Moreover, because any claim seeking relief from post-termination payment obligations has a direct bearing on and relevance to sections of the Agreement governed by ERISA, such a claim is subject to dismissal. See Collins v. Ralston Purina Co., 147 F.3d 592 (7th Cir. 1998)(holding that a breach of contract claim is preempted by ERISA, if it relates to or has a connection with the components of the plan governed by ERISA). Even if the Company intended its breach of contract claim to be governed by federal common law, the Seventh Circuit has refused to recognize breach of contract claims in ERISA cases.[2] See Buckley Decent, Inc. V. Travelers Plan Adm'r of Ill., Inc., 39 F.3d 784, 788-89 (7th Cir. 1994). Therefore, the Company's breach of contract allegations arising out of ERISA-governed components of the employment agreement (§ 7.4, § 8.7, § 12.7) must be dismissed.

However, the Company's state law breach of contract claim remains viable as a claim for relief on grounds arising outside the post-termination, ERISA-governed components of the Employment Agreement, such as those relating to unjust enrichment

---

[2] The Company contends that rescission is a remedy for a breach of contract claim (Pl.'s Br. 8); however, rescission is not a valid remedy for a breach of contract claim under ERISA law since ERISA does not recognize breach of contract by a beneficiary. Rescission may be a potential remedy available to the Company under "Count II: Fraud and Deceit" of the Amended Complaint; however, Mr. Marsh does not seek judgment on that count in this motion.

during Mr. Marsh's employment with the Company.  See Miceli v. Aetna Life Ins. Co., 2006 WL 533369, at *2 (N.D.Ill. Nov. 1, 2006).  Here, the Company has sufficiently alleged a state law breach of contract claim for non-ERISA benefits allegedly wrongfully received by Mr. Marsh, and it has adequately notified him of the principal allegations. Therefore, Mr. Marsh's motion for judgment on the pleadings is granted with respect to ERISA claims arising out of § 7.4, 8.7 and 12.7 of the Employment Agreement, but denied with respect to claims arising outside of ERISA governance for conduct that occurred during Mr. Marsh's employment with the Company.

### III.     *Count III of Amended Complaint: Claim Under § 502(a)(B)(ii) of ERISA*

Mr. Marsh seeks judgment on Count III of the Amended Complaint in which the Company seeks equitable relief in the form of either: 1) reimbursement for paid benefits and forgiveness of its duty to pay the balance of the Salary Continuation Benefit;  or 2) retroactive administration of a "for cause" termination under § 7.3 of the Employment Agreement.  (Am. Compl. at 15.)  Under 29 U.S.C. § 1132(a)(3)(B), which governs Civil Enforcement of ERISA cases, a civil action may be brought "by a participant, beneficiary, or fiduciary to obtain other appropriate equitable relief to (i) enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (ii) enforce any provisions of this title or the terms of the plan."  The Company argues that, "had the [C]ompany known of [Mr. Marsh's] misconduct . . . , it would have terminated Mr. Marsh "for cause" under § 7.3 of the Employment Agreement."  Thus, Mr. Marsh was unjustly

enriched by his receipt of § 7.4 benefits, including the Salary Continuation Benefit. (Am. Compl. ¶ ¶ 60-62.)

Mr. Marsh contends that the Company's efforts to stop his post-employment payments and recoup payments already made directly contradict the unambiguous language of § 12.7 of the Employment Agreement, which provides that payment agreements are "absolute and unconditional." Mr. Marsh further argues that the purpose of the "equitable relief" language contained in 29 U.S.C. § 1132(a)(3)(B)(ii) is to provide a means to "enforce" the original language of the ERISA Agreement, not to provide a basis on which the Company can seek recoupment and termination of the agreement. (Id.)

The Company contends that ERISA authorizes the Court to provide the Company with "appropriate equitable relief," pursuant to 29 U.S.C. § 1132(a)(3)(B)(ii). According to the Company, "equitable relief" is appropriate in light of its well-pleaded allegations that "Mr. Marsh concealed misconduct, including fraud, to deceive [the Company] into terminating him 'without cause' – triggering benefits under the Plan that Mr. Marsh would not have received if [the Company] had terminated him 'for cause.'" (Id.) The Company argues that "equitable relief" under 29 U.S.C. § 1132(a)(3)(B)(ii) "may take the form of retroactive plan administration" and thus should enable the Company to retroactively enforce the terms of a "for cause" termination under § 7.3 of the Agreement. See Brosted v. Unum Life Ins. Comp. of Am., 421 F.3d 459, 466 (7th Cir. 2005); (citing

Bowerman v. Wal-Mart Stores, Inc., 226 F.3d 574, 592 (7th Cir. 2000)); (Pl's. Br. 18). While the fact pattern in Bowerman[3] differs from the fact pattern before us, Bowerman does recognize the principle permitting the retroactive administration of Plan provisions. Whether Mr. Marsh's alleged misconduct as a matter of fact would justify the retroactive administration of "for cause" termination is not before us at this juncture. This claim, in any event, need not be dismissed pursuant to the Rule 12(c) Motion.

In addition to the above claim for "equitable relief" in the form of retroactive administration of a "for cause" termination, the Company also separately seeks "equitable relief," asserting that Mr. Marsh owes monetary restitution damages in the amount equal to what he has received as unjust enrichment. Under 29 U.S.C. § 1132(a)(3)(B), claims for relief must be "equitable" in nature, while claims for "money damages" are impermissible under ERISA. Health Cost Controls v. Skinner, 44 F.3d 535, 537 (7th Cir.

---

[3] In Bowerman, the plaintiff quit her job at Wal-Mart where she had been insured by the "The Wal-Mart Plan" (governed by ERISA). Before quitting her job, however, the plaintiff exercised her option to continue medical coverage through COBRA. Less than one month after quitting her job, the plaintiff learned that she was pregnant and returned to work at Wal-Mart. She qualified to be insured under "The Wal-Mart Plan" on the day she returned to work, yet she was denied medical coverage because she had failed to pay the premium on her COBRA insurance for the one month that she had been covered. This missed payment created a "lapse" in the plaintiff's insurance coverage, making her pregnancy a "pre-existing" condition that disqualified her from receiving Plan coverage. The Seventh Circuit held that Bowerman "ought to have an opportunity to tender the COBRA payment that would have been paid if the Plan had lived up to its obligation to inform her fully of the operation of the Plan." Bowerman, 226 F.3d at 592. The Court further held that if she made the necessary payment, "the Plan then must pay the maternity-related medical expenses that it ha[d] refused to pay in reliance on the pre-existing condition limitation." Id.

1995).  The Seventh Circuit has held that "equitable relief" under 29 U.S.C. § 1132(a)(3)(B) includes "categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)."  Id. at 538, n. 7; (citing Mertens v. Hewitt Assoc., 508 U.S. 248, 256 (1993)(emphasis in original).  Restitution may take the form of monetary relief, but it is available to a prevailing plaintiff only if the underlying claim is equitable in nature.  Skinner, 44 F.3d at 537, n. 5.  As this court has ruled, restitution is "available only when one party has been unjustly enriched at another's expense."  United of Omaha Life Ins. Co., 2000 WL 1358616, at *6 (S.D. Ind. Sep. 19, 2000); (citing Skinner, 44 F.3d 535, 538, n. 7).

The Seventh Circuit has established a four-factor test to determine whether an employer is entitled to a refund of payments in a restitution claim.  See UIU Severance Pay Trust Fund v. United Steelworkers of America, 998 F.2d 509, 513 (7th Cir. 1993).  Although this is not a complete catalogue of factors to be considered in determining whether an employer is entitled to refunded payments, the following are at least some of those factors:

> (1) Are [these] contributions the sort of mistaken payments that equity demands be refunded?
> 
> (2) Has the [Employer] delayed bringing this action for so long that laches, or some other equitable defense, bars recovery?
> 
> (3) In the same vein, has the [Employer], by continuing the payments for years without apparent question, somehow ratified past payments? and;
> 
> (4) Can the [Employer] demonstrate that the party from whom it seeks payment would be unjustly enriched if recovery were denied?

Id.[4]

The purpose of 29 U.S.C. § 1132(a)(3) is to serve as a "catchall provision" to provide "appropriate equitable relief for injuries caused by violations" that ERISA does not specifically address. Varity Corp. v. Howe, 516 U.S. 489, 512 (1995). In this case, if the Company can prove, based on the evidence adduced, that Mr. Marsh's misconduct warrants "equitable relief" by showing that he was unjustly enriched at the expense of the Company, it may be entitled to an award of restitution and/or retroactive administration of a "for cause" termination under 29 U.S.C. § 1132(a)(3)(B). Thus, it would be premature for the Court to pass final judgment on the sufficiency of the Company's claim in Count III under 29 U.S.C. § 1132(a)(3) before the facts of the case are fully developed. The motion for judgment on this claim shall therefore, be denied.

### IV. *Count I of Amended Counterclaim: Violation of 29 U.S.C. § 1132(a)(1)*

Mr. Marsh also seeks judgment on Count I of his Amended Counterclaim brought under 29 U.S.C. § 1132(a)(1), which authorizes "[a] civil action [to] be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits

---

[4] Although ERISA does not recognize a breach of contract by a Plan beneficiary, the type of conduct that would constitute a breach of contract under common law may be adequate to warrant "equitable relief" under 29 U.S.C. § 1132(a)(3)(B). Thus, 29 U.S.C. § 1132(a)(3)(B) can provide a remedy for breaching conduct despite ERISA declining to designate specific remedial provisions for such behavior.

under the terms of the plan." (Am. Countercl. 1). Mr. Marsh contends that the Company has violated the Employment Agreement by not paying to him the $2,171,261.48 remaining under his Salary Continuation Benefit. (Am. Countercl. ¶ 33). He further contends that the Company violated the Agreement by failing to fulfill its various other obligations under § 7.4. (Am. Countercl. ¶ 34). Therefore, in his motion directed at Count I of the Amended Counterclaim, Mr. Marsh seeks an order, directed at the Company, requiring it to fulfill its contractual obligations immediately. In addition, Mr. Marsh seeks an immediate recovery of his litigation expenses as enumerated under § 11.1 of the Agreement. (Am. Countercl. ¶ 5).

Mr. Marsh relies on what he maintains is the clear and unambiguous language of § 12.7 and § 11.1 to support his Amended Counterclaim. (Def. Br. 10). However, even if the language of the contract is deemed clear and unambiguous, having previously denied Mr. Marsh's motion for judgment on Count III of the Amended Complaint, thereby allowing the Company an opportunity to prove that Mr. Marsh was unjustly enriched at the expense of the Company through his own misconduct, the Court will not require the Company to make such payments prior to a final resolution of the unjust enrichment claim brought pursuant to 29 U.S.C. § 1132(a)(3)(B). Judgment on Count I of the Amended Counterclaim would be premature, as would be any determination of entitlement to damages and litigation fees. Thus, Mr. Marsh's motion for judgment on Count I of his Amended Counterclaim must be denied.

### V.     *Count VI: Request for Declaratory Judgment, Pursuant to 28 U.S.C. § 2201*

In Count VI of the Amended Counterclaim, Mr. Marsh seeks a declaration, pursuant to 28 U.S.C. § 2201, requiring that the Company compensate him for the costs, expenses and attorneys' fees arising out of this litigation.  (Am. Countercl. ¶ 58.)

Mr. Marsh again contends that the unambiguous language of the Employment Agreement under § 11.1 entitles him to reimbursement of expenses incurred by him and compensation for future expenses arising out of this litigation.  Mr. Marsh further argues that since all the other claims in this case arise under the ERISA-governed sections of Employment Agreement, § 11.1 of the Agreement is also governed by ERISA.  (Id.)  Mr. Marsh supports this contention by citing a recent, factually similar case from this court, which held that a contractual provision entitling the executive to compensation for litigation expenses arising out of a severance dispute was governed by ERISA based on the contract interpretation.  David A. Marsh v. Marsh Supermarkets, Inc., , 2007 U.S. Dist. LEXIS 40503, at *4-6 (S.D. Ind. May 31, 2007).  Similarly, Mr. Marsh contends here that the clear, unambiguous language of § 11.1 entitles him to a declaratory judgment awarding him reimbursement of his fees and expenses.

The Company contends that Don Marsh's case is distinguishable from the case involving David Marsh because David Marsh's case involved only ERISA-governed claims, whereas in Don Marsh's case, § 11.1 applies to the ERISA claims as well as to the non-ERISA claims, such as reimbursement for the fraudulent spending of Company funds by Mr. Marsh during the time of his employment.  Thus, according to the Company, §

11.1 is governed by Indiana law and an order enforcing that provision would violate Indiana public policy by encouraging frivolous lawsuits by the beneficiary and discouraging valid claims by the fiduciary. (Id. at 22-23.)

There is no contention that the language of § 11.1 of the Employment Agreement is ambiguous; however, the enforceability of this clause and the ultimate amount owed under this provision depend entirely on a determination of the nature, extent and consequences of Mr. Marsh's conduct. Therefore, the Court shall reserve any decision as to the enforceability of § 11.1 until all the underlying factual disputes have been finally resolved. Thus, Mr. Marsh's motion for judgment on his claim of entitlement to a declaration awarding him remuneration of his litigation expenses shall be denied.[5]

## VI. Conclusion

For the reasons set forth above, Mr. Marsh's motion for judgment on the pleadings on Count I of the Amended Complaint is GRANTED in part and DENIED in part ; and Mr. Marsh's motion for judgment on the pleadings with respect to Count III of the Amended Complaint, Count I of the Amended Counterclaim, and Count VI of the Amended Counterclaim is DENIED.

IT IS SO ORDERED.

Date: ___07/23/2010___

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[5] The Court decides to withhold decision on the issue of whether ERISA or Indiana law governs § 11.1 until the facts of the case have been fully developed.

Copies to:

Kellie M. Barr
BOSE MCKINNEY & EVANS, LLP
kbarr@boselaw.com

Winthrop James Hamilton
BOSE MCKINNEY & EVANS, LLP
jhamilton@boselaw.com

David K. Herzog
BAKER & DANIELS - Indianapolis
david.herzog@bakerd.com

Ryan Michael Hurley
BAKER & DANIELS - Indianapolis
ryan.hurley@bakerd.com

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP
amcneil@boselaw.com

Munjot Sahu
BAKER & DANIELS - Indianapolis
munjot.sahu@bakerd.com