UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARSH SUPERMARKETS, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim-Defendant, | ) | |
| | ) | |
| v. | ) | Cause No. 1:09-CV-0458-SEB-TAB |
| | ) | |
| DON E. MARSH, | ) | |
| | ) | |
| Defendant/Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EMPLOYMENT AGREEMENT BY AND | ) | |
| BETWEEN DON E. MARSH AND | ) | |
| MARSH SUPERMARKETS, INC. | ) | |
| DATED AUGUST 3, 1999, AS | ) | |
| AMENDED JANUARY 1, 2005 and | ) | |
| DECEMBER 30, 2005, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

**MARSH SUPERMARKETS, INC.'S RESPONSE TO NON-PARTY
DAVID A. MARSH'S VERIFIED MOTION FOR PROTECTIVE ORDER**

David A. Marsh ("David")[1] is not entitled to a protective order disqualifying

Baker & Daniels LLP ("B&D") from taking his deposition in this action because a) no conflict of

interest exists that precludes B&D from taking David's deposition; and b) even if there had been

a conflict, David waived it years ago when B&D opposed him in his own lawsuit concerning the

same subject matter at issue here.  Therefore, plaintiff/counterclaim defendant Marsh

Supermarkets, Inc. (the "Company") respectfully requests that David's Verified Motion for

Protective Order be denied.

---

[1] We use first names solely to avoid confusion.

The Company brought this action against David's father, Don E. Marsh ("Don"), on the basis that Don misused Company funds while he was the Company's CEO.  David was president of the Company while Don was CEO.  The Company paid expenses for David during his tenure as president that it later determined were not business related and thus should have been paid by David personally.  Discovery in this case, including Don's own deposition, has revealed that Don approved payment of many of the expenses David submitted to the Company.  The Company, through its counsel Baker & Daniels LLP ("B&D"), wishes to depose David to gain a better understanding of Don's approval of David's expenditures.

B&D completed estate planning documents for David more than five years ago.  David provided the firm with certain personal information to complete the documents.  David contends that the information he provided will be used to his disadvantage if B&D is permitted to depose him.  The information is not related to any issue involved in this action, however.  It will not be revealed in David's deposition, and he will not be questioned about it.  The only way in which the estate planning work will be raised in the deposition is in the context of determining why the Company paid for the work on David's behalf.

Further, if David believed that B&D had a conflict that prevented it from being adverse to him, he surely would have raised it when B&D represented the Company against him in the litigation he commenced in September 2006.  In that action, the Company asserted counterclaims against David based on the same unauthorized spending about which it seeks to question him in this case.  David raised no objection during his litigation against the Company because there was no conflict.  Nothing has changed in the interim.

2

## I.    B&D has no conflict of interest.

The standards used to determine whether counsel should be disqualified "derive from two sources: Indiana's Rules of Professional Conduct, and federal common law." *Leathermon v. Grandview Memorial Gardens*, No. 4:07-cv-137-SEB-WGH, 2010 WL 1381893, at *8 (S.D. Ind. March 31, 2010); *see* S.D. Ind. R. 83.5.  David has stated that he is a former client of B&D.  (Br. in Support of Verified Mot. for Protective Order, 4.)  An attorney's duties toward former clients are governed by Rule 1.9 of the Indiana Rules of Professional Conduct.

The Seventh Circuit has stated that "[d]isqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary.  A disqualification of counsel, while protecting the attorney-client relationship, also serves to destroy a relationship by depriving a party of representation of their own choosing."  *Freeman v. Chicago Musical Instrument Co*., 689 F.2d 715, 721 (7th Cir. 1982).  As a result, an attorney who previously represented a client can later be adverse to the client as long as there is no "substantial relationship" between the subject matter of the former and current representations.  To determine whether a substantial relationship exists, the Court must decide "whether it could reasonably be said that during the former representation the attorney might have acquired information related to the subject matter of the subsequent representation."  *LaSalle National Bank v. County of Lake*, 703 F.2d 252, 255 (7th Cir. 1983) (citing *Cannon v. U.S. Acoustics Corp.*, 398 F.Supp. 209, 223 (N.D. Ill. 1976)).  Determining the existence of a substantial relationship "does not necessarily involve any inquiry into the imponderables involved in the degree of relationship between the two matters but instead involves a realistic appraisal of the possibility that confidences had been disclosed in the one

matter which will be harmful to the client in the other." *Novo Terapeutisk Laboratorium v. Baxter Travenol Laboratories*, 607 F.2d 186, 189 (7th Cir. 1979).

The Seventh Circuit applies a three-step analysis to determine if a conflict that justifies disqualification exists. *Leathermon*, 2010 WL 1381893, at *8; *Emmis Operating Co. v. CBS Radio, Inc.*, 480 F.Supp.2d 1111, 1118 (S.D. Ind. 2007). The test is based on Canons 4 and 9 of the American Bar Association's Code of Professional Responsibility, which protect the same interests as Rule 1.9 of the Indiana Professional Rules of Conduct.[2] *Leathermon* 2010 WL 1381893, at *8 n.19; *Emmis Operating Co.*, 480 F.Supp.2d at 1118 n.4. The analysis requires the Court to (1) make a "factual reconstruction of the scope of the prior legal representation"; (2) determine whether it is "reasonable to infer that confidential information allegedly given would have been given to a lawyer representing a client in those matters"; and (3) determine "whether that information is relevant to the issues raised in the litigation pending against the former client." *LaSalle National Bank*, 703 F.2d at 255.

    a.  <u>There is no substantial relationship between the information David provided to B&D and the issues to be covered in David's deposition.</u>

The estate planning work that B&D completed for David consisted of drafting a will, a revocable trust document, living will declarations, a power of attorney declaration, and an

---

[2] David suggests that Rules 1.9(a) and 1.9(c) of the Indiana Rules of Professional Conduct will be violated if B&D takes his deposition. (Br. in Support of Verified Mot. for Protective Order, 4-5). Rule 1.9(a) states, "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Rule 1.9(c) states, "[a] lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter: (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client." The Seventh Circuit's analysis is used to determine if either Rule 1.9(a) or Rule 1.9(c) has been violated. *See Borom v. Town of Merrillville*, No. 2:07 CV 98, 2007 WL 1797639 at *4, (N.D. Ind. June 19, 2007). David also claims that Rule 1.6(a) of the Indiana Rules of Professional Conduct will be violated if B&D takes his deposition, as suggested by Comment 18 to the Rule. Comment 18 states that "[t]he duty of confidentiality continues after the client-lawyer relationship has terminated. See Rule 1.9(c)(2)." Thus, obligations under Rule 1.6(a) and Comment 18 are not substantively different from obligations under Rule 1.9(c)(2).

irrevocable insurance trust document.  In his motion, David does not specify the type of confidential information he claims to have given B&D; he merely states, "[d]evising and implementing wealth succession plans are highly factual in nature and involve deeply personal and confidential matters."  (Br. in Supp. of David A. Marsh's Verified Mot. for Protective Order, 7.)  Yet the brief description David provides indicates that any confidential information he gave to B&D consisted of nothing other than his personal information needed to complete the estate planning documents.

As for whether the claimed confidential information is relevant to the litigation against the former client, first, David obviously is not a party to this action, adverse or otherwise. And the personal information that David provided to enable B&D to complete the estate planning work is not relevant to the Company's claims against Don, which involve Don's misuse of Company funds.  Nor will B&D question David about his estate planning in his deposition. As stated earlier, the Company needs to question David only on why the Company paid for the estate planning services.  The substance of the estate planning work is not at issue.[3]  Because the confidential information that David provided to B&D to enable the firm to complete his estate planning documents is not substantially (or even logically) related to the issues raised in this case, there is no basis to disqualify B&D from taking David's deposition.

## II.        Even if there had been a conflict, David waived it years ago.

Although there is no conflict of interest preventing B&D from taking David's deposition, David clearly would be deemed to have waived any conflict that may have existed by failing to assert it promptly.  To discourage tactical gamesmanship, the Seventh Circuit has stated that motions to disqualify "should be made with reasonable promptness after a party

---

[3] If the Court were to find that a conflict of interest precludes B&D from questioning Mr. Marsh about his estate planning fees, B&D would be willing to refrain from questioning Mr. Marsh about the fees in his deposition to avoid the conflict.

discovers the facts which lead to the motion." *Kafka v. Truck Ins. Exch.*, 19 F.3d 383, 386 (7th Cir. 1994).  If a motion to disqualify is not filed promptly, "[w]aiver is a valid basis for the denial of a motion to disqualify; a former client who is entitled to object to an attorney's representation of an adverse party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right."  *Chemical Waste Management, Inc. v. Sims*, 875 F.Supp. 501, 504-05 (N.D. Ill. 1995) (citing *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983)); *see also Central Milk Producers Cooperative v. Sentry Food Stores*, *Inc.*, 573 F.2d 988, 992 (8th Cir. 1978); *Redd v. Shell Oil Co.*, 518 F.2d 311, 315 (10th Cir. 1975); *Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725, 731 (11th Cir. 1988).  In addition to considering the length of the delay in bringing a motion to disqualify, "[a] court should also consider such factors as when the movant learned of the conflict; whether the movant was represented by counsel during the delay; why the delay occurred; and whether disqualification would result in prejudice to the nonmoving party."  *Chemical Waste Management, Inc.*, 875 F.Supp. at 505 (citing *Employers Insurance of Wausau v. Albert D. Seeno Construction Co.*, 692 F. Supp 1150, 1165 (N.D. Cal. 1988);  *Commonwealth Insurance Co. v. Graphix Hot Line, Inc.*, 808 F.Supp. 1200, 1208 (E.D. Pa. 1992);  *Alexander v. Primerica Holdings, Inc.*, 822 F.Supp. 1099, 1115 (D.N.J. 1993)).

Although not mentioned in David's motion, B&D was adverse to David in the action he brought against the Company in 2006.  *David A. Marsh v. Marsh Supermarkets, Inc. et al.*, No. 1:06-cv-1395-JDT-TAB (S.D. Ind. filed September 20, 2006).  At no point during that litigation did David claim that a conflict of interest prevented B&D from representing the Company, even though David and his counsel were made aware that his estate planning fees were at issue.  David first received notice that the estate planning fees were at issue when the

Company filed its Amended Answer and Counterclaim on November 29, 2006 (copy attached as Exhibit A), in which the Company alleged that "David improperly caused Marsh Supermarkets to pay for personal expenses using what were called 'e-vouchers.'" (Exhibit A, p. 14.) David submitted his estate planning invoices for payment through the e-voucher system. Therefore, he had enough information when the counterclaim was filed to assert the conflict of interest claim that he is making now. David was represented in his action against the Company by Krieg DeVault LLP, which also represents David for the purpose of his deposition in this lawsuit.[4] Thus, both David and his counsel were made aware of B&D's adverse representation and the estate planning expenses at issue when the counterclaim was filed.

David and his counsel received several additional reminders that his estate planning fees were at issue in that case. On February 1, 2007, B&D sent David's counsel a letter (copy is attached as Exhibit B) stating among other things that David had caused the Company to pay for the preparation of his personal tax returns, as well as his personal financial and estate planning services. Enclosed with that letter was a CD containing invoices paid by the Company for those services. David's counsel's response to the letter (Exhibit C) addresses alleged deficiencies in the Company's termination notice, but says nothing about any conflict of interest.

David was again notified that his estate planning fees were at issue when the Company informed him in an April 9, 2007 letter on which his attorney was copied that the Company's board of directors had decided to terminate his employment agreement for "cause." Attached to the letter were minutes from the special meeting of the Company's board of directors during which the board decided to terminate David's employment for cause. The minutes (along with the letter, Exhibit D) state that the board concluded that David "caused or allowed the Company to pay for various personal services, including personal financial planning, the

---

[4] Mr. Marsh was also represented by Latham & Watkins LLP in his lawsuit against the Company.

BDDB01 6626494v1

preparation of tax returns, and estate planning services, without authority under his Employment Agreement and without causing or allowing the Company to impute income to him as a result." (Exhibit D, p. 2.)  Once more, David and his counsel said nothing about any conflict.

The Company made even more clear that the estate planning fees were at issue when filed its Amended Answer and Counterclaim to First Amended Complaint (Exhibit E) on July 18, 2007.  The amended counterclaim stated in part, "David also caused or allowed the Company to pay for various personal services, including personal financial planning, the preparation of tax returns, and estate planning services, without authority under his Employment Agreement and without causing or allowing the Company to impute income to him as a result." (Exhibit E, p. 44.)  Indeed, David has acknowledged that B&D's estate planning fees were at issue in the Company's Amended Answer and Counterclaim to First Amended Complaint.  (Br. in Supp. of David A. Marsh's Verified Mot. for Protective Order, 2.)

There is more.  On August 20, 2007, B&D served David's counsel with a notice for David's deposition in his case. (See Exhibit F.)  Obviously, David would have been questioned in that deposition about the issues involved in his case, including issues relating to the Company's counterclaim, and in particular, the professional service fees he charged to the Company.  Shortly after B&D served the notice, David's counsel filed an Emergency Motion for Protective Order (Exhibit G), but again failed to raise any conflict of interest.  The motion simply requested that the Company be barred from taking David 's deposition "until a reasonable time after [the Company] satisfies its contractual obligation to pay David's attorneys' fees and costs as they are incurred . . . ."

David offers no reason why he could not have asserted and did not assert a conflict of interest during his own lawsuit against the Company.  He seems to suggest that he did

8

not have notice of the potential conflict until he received a March 20, 2009 letter from the

Company (Exhibit H) stating that the Company determined after discussions with an IRS agent

that some expenses it paid on his behalf constituted income to him.  (Non-Party David A.

Marsh's Verified Mot. for Protective Order, ¶¶ 2-5.)  However, David became aware that the

Company had concern about whether some of the expenses it paid on his behalf were personal

expenses when the Company initially filed its counterclaim against him.  The March 20, 2009

letter states that "[m]ost of these [personal] expenses were paid through the e-voucher system,"

and the Company's initial counterclaim stated that David caused the Company to pay his

personal expenses through the e-voucher system.  As a result, the March 20, 2009 letter did not

provide David with new information.

David also has not explained why he did not raise a conflict of interest issue

sooner in this action.  He and his counsel had notice that the Company wished to depose him in

this matter seven months before the deposition was scheduled to take place, yet they chose not to

raise the issue until the late afternoon of March 14, 2011—less than three days before David's

deposition was scheduled.[5]  In sum, if David truly believed that B&D's having performed estate

planning work for him over five years ago disqualified the firm from being adverse to him, he

waived any objection by failing to assert it in his own litigation in which B&D opposed him.

Furthermore, disqualifying B&D from taking David's deposition would unfairly

prejudice the Company.  Because David's counsel did not inform B&D that she believed a

conflict of interest existed until fewer than three days before the date on which David's

---

[5] Mr. Marsh's counsel was contacted initially in August 2010 to schedule the deposition, and the deposition was
scheduled for August 17, 2010.  The parties later agreed to postpone the deposition.  Counsel for the Company then
contacted Mr. Marsh's counsel on January 13, 2011 to schedule the deposition, and after agreeing on a deposition
date, a subpoena for the deposition was served on February 8, 2011.  Even though Mr. Marsh should have raised a
potential conflict of interest during his lawsuit against the Company, he was given the opportunity to raise the issue
in this action as early as seven months before the date on which his deposition was scheduled.

BDDB01 6626494v1

deposition was scheduled, B&D began preparing for David's deposition, and the Company has already paid the costs associated with the preparation. The Company will lose the benefit of the preparation if B&D is disqualified, as it would be forced to retain additional counsel for the purpose of taking the deposition. The Company would also incur significant attorneys' fees if it has to retain separate counsel, as counsel would have to spend a considerable amount of time becoming familiar with the issues involved in this action and the facts that have been developed over the course of approximately two years.

If a conflict of interest existed, David and his counsel had enough information to identify the conflict years before the date on which his deposition was scheduled. David's decision to wait until just before his deposition to assert a conflict of interest, along with his inability to justify why he did not assert the conflict earlier, the fact that he was represented by counsel throughout his action against the Company and during the period in which his deposition was being scheduled, and the prejudice that will result to the Company if B&D cannot take David's deposition, compel the conclusion that David has waived any conflict of interest that may have existed.

### III.    Conclusion

No conflict of interest exists to prevent B&D from taking David's deposition. And if a conflict did exist, David waived it long ago. Accordingly, the Company respectfully requests that the Court deny David's Verified Motion for Protective Order and allow B&D to take David's deposition.

Respectfully submitted,

BAKER & DANIELS LLP


By: *s/ Munjot Sahu*
     David K. Herzog
     Ryan M. Hurley
     Munjot Sahu
     300 North Meridian Street, Suite 2700
     Indianapolis, Indiana  46204-1782
     david.herzog@bakerd.com
     ryan.hurley@bakerd.com
     munjot.sahu@bakerd.com

*Attorneys for Plaintiff/Counterclaim-*
*Defendant Marsh Supermarkets, Inc.*


<u>CERTIFICATE OF SERVICE</u>

     I certify that a copy of Marsh Supermarkets, Inc.'s Response to David A. Marsh's

Verified Motion for Protective Order was filed electronically on April 14, 2011.  Notice of this

filing will be sent to the following parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

     Andrew M. McNeil
     W. James Hamilton
     Emily L. Yates
     BOSE McKINNEY & EVANS LLP
     111 Monument Circle, Suite 2700
     Indianapolis, IN  46204
     AMcNeil@boselaw.com
     JHamilton@boselaw.com
     EYates@boselaw.com

Linda J. Cooley
C. Joseph Russell
KRIEG DeVAULT LLP
One Indiana Square, Suite 2800
Indianapolis, IN 46204
lcooley@kdlegal.com
crussell@kdlegal.com


_s/_ Munjot Sahu

12