UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARSH SUPERMARKETS, INC.,     )<br>  Plaintiff/Counterclaim )<br>  Defendant,      )<br>            )<br> vs.           )<br>            )<br>DON E. MARSH,     )<br>  Defendant/Counterclaim )<br>  Plaintiff.      )<br>_____  )<br>            )<br>DON E. MARSH,     )<br>  Third Party Plaintiff,  )<br>            )<br> vs.           )<br>            )<br>EMPLOYMENT AGREEMENT BY AND  )<br>BETWEEN DON E. MARSH AND )<br>MARSH SUPERMARKETS, INC., )<br>  Third Party Defendant. )  | 1:09-cv-00458-SEB-TAB |

**ORDER GRANTING DEFENDANT'S MOTION IN LIMINE**

  Plaintiff, Marsh Supermarkets, Inc. ("the Company"), has filed this lawsuit to recover financial losses allegedly caused by Defendant, Don E. Marsh, during his tenure as Chairman and CEO of the Company.  Asserting breach of contract, fraud, and a claim under ERISA § 502(a)(3)(B)(ii) in its Amended Complaint, the Company has accused Mr. Marsh of diverting Company funds to finance his extravagant lifestyle.  The Court initially denied summary judgment on all counts of the Amended Complaint and Mr. Marsh's counterclaim.  However, upon reconsideration, the Court granted summary

1

judgment in Mr. Marsh's favor with regard to the Company's claim for fraud in the inducement of his Employment Agreement and the Company's obligation to pay his attorneys' fees related to the ERISA claim.[1]

The case is set for trial on February 4, 2013. Mr. Marsh has filed a motion in limine [Docket No. 156] for an order barring the Company from "examining witnesses, offering evidence, making reference to, or commenting upon" his earlier assertion of the Fifth Amendment privilege against self-incrimination. Def.'s Br. at 8. As explained below, the Court GRANTS the motion.

The purpose of a motion in limine is to "streamline trials and settle evidentiary issues in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002). A ruling on a motion in limine has been compared to "an advisory opinion by the trial court," *see Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999) (citation omitted), because it remains dependent upon events that may unfold at trial. *See Luce v. United States*, 469 U.S. 38, 41 (1984). "Indeed[,] even if nothing unexpected happens at trial, the district judge is free . . . to alter a previous *in limine* ruling." *Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1055 (N.D. Ill. 2009) (quoting *Luce*, 469 U.S. at 41-42). District judges have significant discretion when ruling on a motion in limine. *Jenkins v. Chrysler Motor Corp.*, 316 F.3d 663, 664 (7th Cir. 2002).

---

[1] We have instructed the parties that, "to the extent that Mr. Marsh's attorneys' fees and costs relate to his ERISA claim in this lawsuit, the Company committed itself to pay for and, therefore, must pay Mr. Marsh's fees and costs as they are incurred." Docket No. 146 at 10.

The Case Management Plan, as amended, has afforded the parties over two years to complete all discovery concerning non-expert witnesses and liability.  *See* Docket Nos. 21 (approving case management plan on July 9, 2009), 80 (extending deadlines for non-expert witness and liability discovery to March 18, 2011), 134 (extending deadline for remaining discovery to October 1, 2011).  Pursuant to this plan, the Company began a lengthy oral deposition of Mr. Marsh on July 22, 2010.  Def.'s Reply at 5.  That same day, Mr. Marsh received a report from the Internal Revenue Service (IRS) indicating that, following its audit of the Company, the IRS was likely to open a criminal investigation of his alleged actions.  Def.'s Br. at 1; Voyles Aff. ¶¶ 3, 5.  The parties postponed the remainder of the deposition so that Mr. Marsh could review the IRS report and confer with counsel.  Meanwhile, on July 22, 2010, Mr. Marsh engaged attorney James Voyles to represent him in any criminal matter related to the IRS investigation.  Voyles Aff. ¶ 2.  Mr. Voyles has stated as follows regarding his representation of Mr. Marsh:

> I advised Mr. Marsh and Mr. McNeil that Mr. Marsh should invoke his Fifth Amendment right to remain silent if the Company's counsel asked him questions . . . . related to the subject matter that was under review, or potentially under review, by the IRS Criminal Investigation Division.  I gave such legal advice to Mr. Marsh on the basis that his answers might be later used against him in a criminal investigation by the IRS and/or other law enforcement agencies.

*Id.* ¶ 8.

Mr. Marsh's deposition resumed on September 13, 2010.  Early in that proceeding, the Company asked him, "If . . . the records contain nothing except your credit card bills, how do we determine why you spent this or that sum of money?"  Marsh Dep. II at 309.

3

Mr. Marsh was instructed by counsel "not to answer in light of the pending IRS issues and the suggestion that there[ were] criminal tax evasion charges afoot" and clarified that he refused to answer the question based on his Fifth Amendment protection against self-incrimination. *Id.* at 309, 311. According to the Company, Mr. Marsh asserted his Fifth Amendment privilege 215 times on September 13, 2010 "in response to questions bearing on core issues" such as the documentation of his expenditures and use of the Company's plane. Pl.'s Resp. at 1. The parties tabled his deposition that day, and the IRS investigation proceeded in the interim.

On June 23, 2011, Mr. Marsh received a copy of a letter from the IRS reporting that its investigation against the Company was closed.[2] Accordingly, Mr. Voyles notes, on or about August 22, 2011, he "advised Mr. Marsh and Mr. McNeil that [he] was comfortable allowing Mr. Marsh to answer questions to which he previously asserted his Fifth Amendment right to remain silent . . . after it became apparent that a likelihood of a criminal investigation . . . had diminished." Voyles Aff. ¶ 10. Counsel for the Company received notification of Mr. Marsh's decision to withdraw invocation of his Fifth Amendment privilege at that time. Def.'s Br. at 2. In the ensuing colloquy of dispositive motions, the Company included several references to Mr. Marsh's prior assertion of this privilege. *E.g.,* Pl.'s Resp. to Mot. to Reconsider at 2, 4, 5; Pl.'s Br. for Second Mot. to Reconsider at 2, 12, 16. Mr. Marsh now contends that "it is clear that the [C]ompany

---

[2]The Company settled with the IRS and was assessed a negligence penalty rather than a civil fraud penalty. Def.'s Br. at 2; Voyles Aff. ¶ 9.

intends . . . to bludgeon [him] at trial with the fact that, at one time, he asserted (upon the advice of counsel) his constitutional right against self-incrimination." Def.'s Br. at 3.

The third and final installment of Mr. Marsh's deposition took place on August 30, 2012. Thus, in Mr. Marsh's view, "by the time of trial, [he] will have answered every question posed to him by the [C]ompany." Def.'s Br. at 3. He filed the instant motion on August 7, 2012, requesting that the jury hear nothing about his earlier invocation of the Fifth Amendment privilege against self-incrimination. The Company rejoins that the motion must be denied because Mr. Marsh "is trying to 'abuse, manipulate or gain an unfair strategic advantage.'" Pl.'s Resp. at 15 (quoting *S.E.C. v. Smart*, 678 F.3d 850, 855 (10th Cir. 2012)). We disagree; based on the record before us, we conclude that there was nothing improper about Mr. Marsh's exercise (and subsequent withdrawal) of this well-enshrined constitutional right which the courts are entrusted to safeguard.

Clearly, "the Fifth Amendment[3] does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 389-91 (7th Cir.1995) ("The rule that adverse inferences may be drawn from Fifth Amendment silence in civil proceedings has been widely recognized by the circuit courts of appeals, including our own."). The reasoning behind this rule is that "[s]ilence is often evidence of the most persuasive character." *Daniels v. Pipefitters'*

---

[3]The Fifth Amendment provides, in relevant part, that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V.

*Ass'n Local Union No.* 597, 983 F.2d 800, 802 (7th Cir. 1993) (quoting *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153-54 (1923)).  But it is also clear that, because "a stigma may somehow result from . . . reliance on the Self-Incrimination Clause," *Emspak v. United States*, 349 U.S. 190, 195 (1955), "any sanction which makes assertion of the Fifth Amendment privilege 'costly'" must be limited.  *Spevack v. Klein*, 385 U.S. 511, 515 (1967); *see also Baxter*, 425 U.S. at 326 (emphasizing the Fifth Amendment's protection of "the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence").  Consequently, the Seventh Circuit has interpreted *Baxter* "to mean that the negative inference against a witness who invokes the Fifth Amendment in a civil case is permissive, not required." *Evans v. City of Chicago*, 513 F.3d 735, 741 (7th Cir. 2008).  Ultimately, the Court must evaluate a motion based on the assertion of this privilege with an eye toward the particular facts of the case at bar.  *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 100 (2d Cir. 2012); *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 546 n.10 (5th Cir. 2012) (citing *Evans*, 513 F.3d at 743).

Mr. Marsh maintains that the circumstances of this case warrant an order granting his motion in limine for three reasons.  Relying on the Seventh Circuit's holdings in *Evans*, 513 F.3d at 743, and *Harris v. Chicago*, 266 F.3d 750 (7th Cir. 2001), he asserts that the Court may exclude evidence of his exercise of the privilege against self-incrimination because "(1) the privilege was asserted in good faith; (2) the privilege was withdrawn in time to complete discovery before trial; and . . . (3) the [Company] is not prejudiced by the

6

withdrawal" of the privilege." Def.'s Br. at 3. Our review of the record brings us to the same conclusion; to that end, we address each of Mr. Marsh's proffered reasons in turn.

It is axiomatic that a civil litigant ought not to invoke the Fifth Amendment to thwart proceedings. *See Ienco v. Angarone*, 429 F.3d 680, 685 (7th Cir. 2005) (approving sanctions for party who relied on the Self-Incrimination Clause as an "obstructionist tactic"). Conversely, it is proper for a civil litigant to assert the Fifth Amendment privilege "if [his] testimony would be incriminating, or if it would 'furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.'" *United States v. George*, 363 F.3d 666, 671 (7th Cir. 2004) (quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951)). This appears to be precisely what Mr. Marsh did, *i.e.*, he asserted his essential constitutional right because "the surrounding facts and circumstances indicate[d] a 'real and appreciable' risk of incrimination." Def.'s Br. at 4 (quoting *Minor v. United States*, 396 U.S. 87, 98 (1969)). During the course of discovery, he had learned that the IRS's criminal division was very likely to investigate the same set of facts giving rise to the Company's lawsuit against him. That the IRS was not transparent with Mr. Marsh concerning the status of its investigation is irrelevant; "[t]he court does not require a showing that there [was] a pending criminal investigation." *Bear Sterns & Co. v. Wyler*, 182 F. Supp. 2d 679, 684 (N.D. Ill. 2002). Rather, Mr. Marsh was entitled to "take the Fifth" as long as he reasonably believed the disclosures in question could be used against him in a criminal proceeding. *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972); *see also United States v. Schaal*, No. 08-MC-8, 2008 WL 5423980, at *3-4 (E.D. Wis. Dec. 30,

7

2008) (noting that the IRS often pursues civil and criminal investigations simultaneously before making any official recommendation).

Despite the fact that Mr. McNeil (civil counsel for Mr. Marsh) and Mr. Voyles both advised Mr. Marsh to assert the Fifth Amendment privilege as he did, the Company maintains that such assertions occurred in bad faith because they were "inconsistent," "random," and "in response to questions that could not possibly have incriminated him." Pl.'s Resp. at 12. The Company makes much of an excerpt from the third day of Mr. Marsh's deposition wherein Mr. Marsh repeatedly insisted, "Nothing incriminates me." *See id.* at 14-15 (citing Marsh Dep. III). We are not persuaded that this statement conclusively establishes bad faith. As our colleague in the Northern District of Illinois wisely noted, "[i]is not necessary . . . that the person [invoking his right against self-incrimination] establish the precise manner in which he will incriminate himself by responding." *United Auto. Ins. v. Veluchamy*, No. 09-C-5487, 2010 WL 749980, at *2 n.2 (N.D. Ill. Mar. 4, 2010). Such a requirement would vitiate the privilege entirely. Thus, "[t]o sustain the privilege, it need only be evident from the implications of the question . . . that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* (citing *Hoffman*, 341 U.S. at 486-87).

Comparing the facts of this lawsuit to those in *Evans* provides clarity regarding the issue of good faith. *Evans* involved police officers who invoked their Fifth Amendment privilege during discovery due to concern regarding a special prosecutor's pending

8

investigation of police conduct. *Evans*, 513 F.3d at 738-39. Three of these officers explained that they based their decision not to testify on advice of counsel; another officer explained that he was worried about the breadth of the investigation and whether he was a target. *Id.* at 743. After reviewing the record, the Seventh Circuit held that the district judge "reasonably could have concluded that the officers were not 'gaming' the system but rather were concerned about the special prosecutor's investigation . . . [, which] indicate[d] a good-faith invocation of the Fifth Amendment." *Id.*

No aspect of Mr. Marsh's case suggests that we should abandon such reasoning to infer an intent to thwart the Company. Moreover, although we are well-acquainted with the operative facts in this lawsuit, it is not our task to predict the likelihood of criminal prosecution following an IRS audit. Nor would Mr. Marsh's Fifth Amendment privilege depend on such prognostication. *See Resnover v. Pearson*, 965 F.2d 1453, 1462 (7th Cir. 1992) (citing *In re Folding Carton Antitrust Litig.*, 609 F.2d 867, 871 (7th Cir. 1979)). In any event, our retrospective analysis indicates that Mr. Marsh's perception of more than a "fanciful possibility of prosecution," *Resnover*, 965 F.2d at 1462, was justified. We therefore conclude that he asserted his Fifth Amendment privilege against self-incrimination in good faith.

Furthermore, we agree that Mr. Marsh withdrew his Fifth Amendment privilege in time to complete discovery before trial in this case. He retracted his assertion of the privilege on August 22, 2011 and contemporaneously informed the Company that he was available to finish his deposition. Cognizant of these timing issues, on August 24, 2011,

9

the Court vacated the settings for the pretrial conference and trial while taking Mr. Marsh's summary judgment motion under advisement. The Court reset the trial for October 15, 2012 after ruling on the motion for summary judgment. Curiously, the Company did not attempt to reopen its deposition of Mr. Marsh until July 19, 2012, *see* Def.'s Br. at 2, nearly one year after Mr. Marsh had made clear that he no longer claimed Fifth Amendment protection. Case law within our circuit supports the Court's conclusion that the timing of Mr. Marsh's actions gave the Company ample time to prepare for trial (which, incidentally, is now set for early 2013, as previously noted). *E.g.*, *Evans*, 543 F.3d at 745 (approving five weeks' notice); *Hawkins v. St. Clair Cnty.*, No. 07-142-DRH, 2009 WL 559373, at *5 n.2 (S.D. Ill. Mar. 5, 2009) (approving one month's notice); *c.f. Harris*, 266 F.3d at 755 (rejecting day-of-trial "notice"). With no explanation from the Company as to any special circumstances making the above-referenced schedule unsatisfactory, we cannot reach the conclusion the Company invites. Simply put, the Company is not entitled to wait nearly one year to continue deposing Mr. Marsh and then complain about insufficient time to complete discovery.[4]

Finally, we address whether Mr. Marsh's withdrawal of the Fifth Amendment privilege against self-incrimination prejudiced the Company and impeded its efforts to obtain discovery. The Company contends that the timing and circumstances of Mr.

---

[4] We are well aware that, as the Company notes, either party could have sought a stay of discovery while the IRS investigation was pending. The Company asserts that because such remedy was available to Mr. Marsh, he should now "bear the consequences." The same is true with respect to the Company.

10

Marsh's assertion of the privilege clearly evince prejudice.  Between September 13, 2010 (privilege assertion) and August 22, 2011 (privilege revocation),[5] the Company deposed twenty-seven witnesses and an expert, filed its expert report, and briefed a summary judgment motion.  Pl.'s Resp. at 7.  These efforts notwithstanding, the Company alleges that Mr. Marsh's Fifth Amendment silence thwarted discovery of his expense documentation practices (including whether he used the Company's customary expense report).  The Company concedes that discovery yielded "valuable information" but argues that deposing its witnesses "without Mr. Marsh's full and complete testimony" was prejudicial.  *Id.*

It is the Company's position that "conducting multiple depositions again to make up for the fact that Mr. Marsh stonewalled the Company would be neither feasible nor fair." Pl.'s Resp. at 8.  Our understanding of this lawsuit differs markedly from the Company's stance concerning fairness.  In the first place, we are not persuaded that Mr. Marsh's assertion of the Fifth Amendment privilege against self-incrimination can be fairly characterized as "stonewalling."  We have already deemed Mr. Marsh's withdrawal of the privilege timely; he revoked his exercise of this right to remain silent as soon as he knew that the possibility of prosecution was remote.  Indeed, the eleven months following such withdrawal afforded the Company a generous opportunity to seek amended answers to all discovery and conduct any necessary depositions.  The Company failed to use this time to full advantage and, as described above, did not reopen Mr. Marsh's deposition until August

---

[5] Fact discovery closed during this time period.  Pl.'s Resp. at 7.

2012. Now, without attempting to explain or justify its delay, the Company argues that obtaining full discovery before trial will be prejudicial. This conclusion is not reflective of the evidence in the record.

We recognize, of course, that asserting the Fifth Amendment privilege against self-incrimination *does* on occasion rise to the level of "stonewalling." *See Cioffi v. United States*, 419 U.S. 917, 917 (1974). Even so, it seems patently inappropriate to apply this term to situations where the party in question has, in fact, cooperated during the discovery process. The instant lawsuit presents such circumstances, as Mr. Marsh's discovery behavior has left little to be desired. He has provided responses to all written discovery, documents totaling over 25,000 pages, and three full days of deposition testimony. Def.'s Reply at 9. Moreover, he cooperated with two sets of interrogatories served on him after he invoked the Fifth Amendment. Beyond that which Mr. Marsh has already furnished, the Company has also gained substantial information from thirty-six depositions (including expert witnesses) and fourteen non-party subpoenas for documents. Def.'s Br. at 6. We are therefore more than a bit perplexed by the Company's argument that it is impracticable and unfair to depose Garry Adams "and likely others," *see* Pl.'s Resp. at 8, before the trial commences in February 2013. Especially puzzling is the Company's sudden need for certain information regarding "other witnesses" Mr. Marsh identified during the final chapter of his deposition. As Mr. Marsh suggests, nothing prevented the Company from obtaining the answers it now seeks during the first two days of his deposition. Having reviewed the portions of the deposition to which the Company

12

cites, we conclude that any remaining knowledge shortfall is attributable not to "stonewalling" by Mr. Marsh, but rather to the Company's failure to ask him the questions that, properly framed, would have elicited that information.

We are similarly unconvinced that Mr. Marsh's Fifth Amendment silence will have appreciable probative value at trial. The Company's argument that such silence eviscerated its dismissed fraudulent inducement claim is unavailing. Each installment of Mr. Marsh's deposition testimony is replete with answers discussing his expenses and documentation thereof. *See* Def.'s Reply at 15-19 (providing numerous examples). None of these responses suggests that, but for Mr. Marsh's Fifth Amendment silence, the Company would have successfully met its burden of pleading and proving fraudulent inducement. In short, there is nothing new about Mr. Marsh's third day of deposition testimony that would provide an otherwise lacking factual basis for this extinguished claim. By the same token, Mr. Marsh's Fifth Amendment silence bears no relevance to the following claims and defenses: that his alleged conduct, which never resulted in a criminal conviction, somehow triggered the "felony or fraud" provision of his Employment Agreement;[6] that such alleged contact constituted criminal conversion; or that Mr. Marsh may be guilty of fraud and deceit. Any minimal probative attributable to Mr. Marsh's invocation of the Fifth Amendment is, in our view, substantially outweighed by the prejudicial effect of allowing jurors to draw an adverse inference from his good faith

---

[6]This provision deals with the Company's prior ability to terminate Mr. Marsh's employment "for cause." Empl. Agrmt. § 8.1.

13

reliance on this constitutional right. Thus, pursuant to Federal Rule of Evidence 403, we will exclude all evidence of Mr. Marsh's prior Fifth Amendment silence.

For the foregoing reasons, the Court concludes that Mr. Marsh has asserted and subsequently withdrawn his Fifth Amendment privilege against self-incrimination in a manner that comports with the Constitution, well-established Seventh Circuit case law, and a sound exercise of our discretion in ruling on this motion in limine. Accordingly, Mr. Marsh's Motion in Limine is GRANTED. The Company and ERISA Plan are hereby barred from examining witnesses, offering evidence or commentary, or making reference to Mr. Marsh's prior invocation of the Fifth Amendment.

IT IS SO ORDERED.

Date: _____10/23/2012_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Christopher William Smith
FAEGRE BAKER DANIELS LLP - Indianapolis
christopher.smith@bakerd.com

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP
amcneil@boselaw.com

Jonathan Lamont Mayes
BOSE MCKINNEY & EVANS, LLP
jmayes@boselaw.com

Kellie M. Barr
BOSE MCKINNEY & EVANS, LLP
kbarr@boselaw.com

Winthrop James Hamilton
BOSE MCKINNEY & EVANS, LLP
jhamilton@boselaw.com

David K. Herzog
FAEGRE BAKER DANIELS LLP - Indianapolis
david.herzog@faegrebd.com

Munjot Sahu
FAEGRE BAKER DANIELS LLP - Indianapolis
munjot.sahu@faegrebd.com

Ryan Michael Hurley
FAEGRE BAKER DANIELS LLP - Indianapolis
ryan.hurley@FaegreBD.com

Bernie W. (Too) Keller
KELLER MACALUSO LLC
too@kellermacaluso.com

C. Joseph Russell
KRIEG DEVAULT LLP
crussell@kdlegal.com

Linda Joy Cooley
KRIEG DEVAULT, LLP
lcooley@kdlegal.com

Emily L. Yates
LITTLER MENDELSON
eyates@littler.com

16