UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARSH SUPERMARKETS, INC., ) | |
| ) | |
| Plaintiff/Counterclaim-Defendant, ) | |
| ) | 1:09-cv-458- SEB-TAB |
| vs. ) | |
| ) | |
| DON E. MARSH, ) | |
| ) | |
| Defendant/Counterclaim-Plaintiff ) | |
| ) | |
| vs. ) | |
| ) | |
| EMPLOYMENT AGREEMENT BY AND ) | |
| BETWEEN DON E. MARSH AND MARSH ) | |
| SUPERMARKETS, INC., DATED AUGUST ) | |
| 3, 1999 AS AMENDED JANUARY 1, 2005 ) | |
| and DECEMBER 30, 2005 ) | |
| ) | |
| Third-Party Defendant. ) | |

**ENTRY REGARDING DON E. MARSH'S MOTION FOR LEAVE
TO SUPPLEMENT JURY QUESTIONNAIRE**
(Docket No. 173)

Don E. Marsh has requested that the Court mail to the venire a questionnaire that his attorneys have drafted, directing each potential juror to respond in writing and return their answers to the Court on or before the day the trial is set to commence. Mr. Marsh's proposed questionnaire expands the information the Court usually solicits from jurors. He bases his request for additional data on the grounds that: (1) both he and Marsh Supermarkets are "well known within the jury catchment area;" (2) it is likely that some, if not many, of the prospective jurors will be familiar with him from the local television ads in which he has appeared and/or will have done business with Marsh Supermarkets; and (3) the press coverage related to this litigation within the counties from

which the venire will be summonsed has been substantial. Mr. Marsh asserts that use of his proposed questionnaire will streamline voir dire and assist the Court in empaneling an unbiased jury.

Marsh Supermarkets does not object to the pending motion, although it does object to some of Mr. Marsh's proposed questions as written, offering some changes and edits to several of Mr. Marsh's proposed questions and asking that the Court include a number of additional questions as proposed by Marsh Supermarkets's lawyers.

District Courts have broad discretion in determining how best to conduct voir dire, including the method of the examination and the questions to be propounded to the panel. Alcala v. Emhart Industries, Inc., 495 F.3d 360, 363 (7th Cir. 2007). Parties to a litigation have no right to particular questions being asked or to the use of a juror questionnaire. Id.; Ex parte Land, 678 So. 2d 224 (Ala. 1996) (a trial court's refusal to allow the use of a juror questionnaire is not, by itself, an abuse of discretion.) Voir dire is deemed sufficient if the court asks enough questions to enable the parties to exercise their challenges intelligently, and, on appeal, a district court's conduct of jury voir dire is reversed only for an abuse of discretion. Alcala, 495 F.3d at 363.

We do not doubt that Mr. Marsh's motion is well-intended, reflecting his interest in having the in-court voir dire be as efficient and productive as possible. Even so, our review of his proposed jury questionnaire leaves us unconvinced that it is an altogether helpful vehicle for accomplishing this goal.

First, the proposed questionnaire consists of a total of fifty-six (56) questions, approximately half of which elicit from the prospective jurors written narratives explaining their answers or explicating their views on topics that are neither clear nor straightforward nor relevant, for example, about IRS policy and the meaning and enforceability of contracts. Many of the questions cannot be answered in a few words or a single sentence and would be more likely to confuse and

frustrate the respondents than provide useful insights. Further, such a lengthy questionnaire as is proposed here potentially could be perceived by prospective jurors as unduly burdensome.[1]  The proposed questionnaire thus creates the additional risk that some, perhaps even many, of the prospective jurors will be deterred from jury service, seeking to be excused prior to the morning of trial in order to avoid having to answer difficult, perhaps obtuse and/or needlessly intrusive questions.

Second, the extensive questions about contracts, fraud, cheating, Don Marsh, and Marsh Supermarkets will surely clue in prospective jurors to the fact that this case involves a contract dispute between Don Marsh and Marsh Supermarkets.  Supplied with such detail, the venire may be tempted to, and could easily perform, internet research in effort to obtain more information about the case. In fact, the venire conceivably could access the docket of the case through PACER. While the Court routinely admonishes the venire not to perform such research and not to talk to their friends and family members about the case, there is no guarantee, especially prior to their report date, that the Court's instructions will be heeded or their importance understood.

Third, the extensive questions asking for the prospective juror's opinions about CEO paid vacations, CEO compensation, golden parachutes, cheating on income tax returns, capital investment firms, and the like appear calculated, at least in part, to gage which jurors might be more sympathetic to one party or the other and/or influence the jury's thinking before the evidence is presented.  The jury selection process is not conducted to allow the parties to obtain jurors predisposed to agree with their litigation positions or place certain ideas into the heads of the jurors before the presentation of the evidence. Rather, the jury selection process is conducted with the goal

---

[1] Mr. Marsh's proposed questionnaire spans six pages.  Marsh Supermarkets' proposed changes and edits would expand that questionnaire to thirteen pages!

of securing a fair and impartial jury. This is the sole purpose of properly framed voir dire.

The task of seating a fair and impartial jury will be far less complicated, and the probability of finding qualified jurors to serve will be increased, if the venire arrives as the courthouse on the morning of jury selection unaware of the parties involved in the particular case for which they have been summoned. The parties can be assured that if, on the morning of trial, it turns out that some of the prospective jurors disclose a disqualifying familiarity with Mr. Marsh or any of the other trial witnesses, have heard about the case through media reports, or have strong views on subjects that would make it impossible for them to serve as fair and impartial jurors, the Court is fully able to quickly identify those individuals and properly, fairly, and efficiently manage the proceedings.

The Court, thus, DENIES Mr. Marsh's Motion for Leave to Supplement Jury Questionnaire filed at Docket No. 173 to the extent that he seeks to have his proposed jury questionnaire mailed to the venire in advance of trial. The Court will, however, consider the questions included in both Mr. Marsh's and Marsh Supermarkets' proposed questionnaires in conducting the in-court voir dire.

IT IS SO ORDERED.

Date: 01/03/2013

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Electronically registered counsel of record