UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARSH SUPERMARKETS, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim-Defendant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | No. 1:09-cv-00458-SEB-TAB |
| DON E. MARSH, | ) | |
| | ) | |
| Defendant/Counterclaim-Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| EMPLOYMENT AGREEMENT BY | ) | |
| AND BETWEEN DON E. MARSH AND | ) | |
| MARSH SUPERMARKETS, INC. | ) | |
| DATED AUGUST 3, 1999, AS AMENDED | ) | |
| JANUARY 1, 2005 AND | ) | |
| DECEMBER 30, 2005, | ) | |
| | ) | |
| Third-Party Defendant | ) | |

**ORDER ON PARTIES' MOTIONS TO ALTER COURT'S ORDER ON POST-TRIAL
CLAIMS**

This cause comes before the Court on three motions brought by the parties in response to

the Court's Order on Post-Trial Claims [Docket No. 294], issued on July 29, 2013.[1] These

motions, which attempt to re-argue legal issues already settled by this Court as well as raising

some new issues for our consideration, are titled as follows: (1) Defendant/Counterclaimant Don

E. Marsh's Motion for Renewed Motion for Judgment as a Matter of Law pursuant to Federal

Rules of Civil Procedure 50(b) [Docket No. 310]; (2) Defendant/Counterclaimant Don E.

Marsh's Motion to Amend Judgment pursuant to Federal Rules of Civil Procedure 59(e) [Docket

---

[1] This order was subsequently amended [Docket No. 296] to correct a minor typographical error regarding the
number of jurors who served at the trial.

No. 312]; and (3) Plaintiff/Counterclaim-Defendant Marsh Supermarkets' Motion to Amend Order on Post-Trial Claims and Final Judgment, also pursuant to Rule 59(e) [Docket No. 314].

We resolve the majority of the arguments raised in these motions in this Order, but we reserve discussion of arguments on the issue of attorneys' fees and costs—raised in these and other motions by the parties—for separate consideration.

## **Procedural Background**

We have outlined the facts of this case in numerous previous orders. *See, e.g.*, Docket No. 136 ("Order Denying Motion for Summary Judgment"); Docket No. 294 ("Order on Post-Trial Claims"). We therefore present here only a brief introduction to the litigation's current status.

Because this case involves issues of both law and equity, it was resolved partly by a jury verdict on the legal issues and partly by our post-trial order on the remaining equitable questions. *See* Docket No. 226. At the conclusion of a two-week trial, the jury returned a verdict on February 15, 2013, finding for Plaintiff Marsh Supermarkets, Inc. ("the Company") on its claims for breach of contract and fraud against Defendant Don E. Marsh ("Mr. Marsh") and awarding damages of $1,400,000 and $800,000, respectively. Docket No. 251 (Verdict), at 2–8. The jury also rejected Mr. Marsh's counterclaim for fraudulent tax filing. *Id.* at 9.

After briefing of the issues remaining post-trial by the parties, we resolved their claims and counterclaims in our July 29, 2013 Order, Docket No. 294, denying the Company's claim for equitable relief by which it sought to avoid its contractual obligations to Mr. Marsh pursuant to ERISA § 502(a)(3), while granting Mr. Marsh's counterclaim under ERISA § 1132(a)(1) for the

full measure of his "salary continuation benefits" and other components of his ERISA plan.[2] *Id.*
at 32–33. We also ruled in Mr. Marsh's favor on his counterclaim for breach of contract against
the Company based on its failure to pay him the benefits owed under the contract. *Id* at 33.
Finally, we awarded attorneys' fees: we allowed Mr. Marsh to recover the fees relating to his
successful ERISA claim, and the Company to recover the fees relating to its successful breach of
contract and fraud claims. *Id.* Both parties dispute nearly every aspect of the post-trial Order, and
both, in particular, continue to dispute tenaciously our disposition of the mirror-image ERISA
claims.

## Legal Analysis

### Standard of Review

**1. Under Rule 50(b)**

Mr. Marsh has renewed his motion for judgment as a matter of law on the Company's
breach of contract and fraud claims. The jury returned a verdict in favor of the Company on both
claims.

Federal Rules of Civil Procedure 50 permits a court to issue judgment as a matter of law
when "a party has been fully heard on an issue during a jury trial and the court finds that a
reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that
issue." Fed. R. Civ. Pro. 50(a). Where, as here, the court elects to send an issue to the jury rather
than grant a motion for judgment as a matter of law, the moving party is permitted to renew the
motion in a timely fashion after the jury has reached its verdict. Fed. R. Civ. Pro. 50(b); *see*
*Neely v. Martin K. Eby Const. Co.*, 386 U.S. 317, 321 (1967). The standard governing a Rule
50(b) motion "mirrors that employed in evaluating a motion for summary judgment" under Rule

---

[2] The Court's post-trial order inadvertently described Mr. Marsh's counterclaim as being pursued under § 502(a)(3).
As Mr. Marsh has pointed out, Count I of his Amended Answer and Counterclaim refers to the correct provision as a
basis for the type of recovery he seeks. Docket No. 73.

56. *Winters v. Fru-Con, Inc.*, 498 F.3d 734, 745–746 (7th Cir. 2007). Thus, "the court construes the evidence strictly in favor of the party who prevailed before the jury and examines the evidence only to determine whether the jury's verdict could reasonably be based on that evidence." *Passananti v. Cook County*, 689 F.3d 655, 659 (7th Cir. 2012) (citing *Tart v. Ill. Power Co.*, 366 F.3d 461, 464 (7th Cir. 2004)).

**2. Under Rule 59(e)**

A motion to amend or alter judgment under Federal Rules of Civil Procedure 59(e) can succeed only when it is established that the court had previously made a "manifest error of law or fact," or newly discovered evidence mandates a different disposition than the one previously reached by the court. *See Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012); *Bordelon v. Chi. Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). A Rule 59(e) motion is not "a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). Although the power to grant motions to amend or alter judgment lies within the Court's sound discretion, "reconsideration of a prior order is an extraordinary remedy" that "must of necessity be used sparingly." *Taylor Woodrow Const. Corp. v. Sarasota/Manatee Airport Auth.*, 814 F. Supp. 1072 (M.D. Fla. 1993).

**Discussion**

The crucial task before us here, as it has been throughout the long life of this litigation, is to identify the boundary between the rightful consequences of Mr. Marsh's misconduct and the powerful statutory guarantees of ERISA. The parties' arguments in opposition to the final post-trial order are poles on the continuum of which our ruling represents a considered balancing

point. The Company presents us with a variation on the theme that has dominated its arguments for years—that in addition to recovering from Mr. Marsh for his tortious conduct, the Company should be granted equitable relief under ERISA such that it can avoid paying him his handsome contractually-promised severance benefits. Pl.'s Br. 2.[3] At the other end of the ERISA spectrum, Mr. Marsh reprises his own insistent refrain—that the absolute nature of his contract's language forbids any net diminution of his benefits, even the company's recovery of tort damages for his gross misconduct. In our post-trial order, we found neither argument to be tenable. Instead, we held that ERISA guaranteed to Mr. Marsh the enjoyment of the benefits due him under the strong, unambiguous language of the Employment Agreement after he was terminated without cause; neither the contract nor ERISA's protections, however, immunized Mr. Marsh from the consequences of his breach of contract and his long history of defrauding the company to which he was bound as CEO and its fiduciary. Docket No. 294 at 24–30. In other words, we reached what we viewed as the sensible conclusion that ERISA governs only the portions of the Employment Agreement dealing with Mr. Marsh's benefits package; the ERISA portions of the contract can neither be disregarded wholesale nor unduly aggrandized to crowd out all other source of obligation between the Company and Mr. Marsh.

We now reaffirm those conclusions reached in our post-trial order. The parties' arguments on this central matter are by now quite familiar, so we review them below only briefly. We then turn away from this well-trod ground to discuss the handful of other matters raised by the parties in these three motions.

---

[3] "Plaintiff's Brief" for purposes of this order refers to the brief in support of Plaintiff's Motion to Amend Order on Post-Trial Claims and Final Judgment [Docket No. 315].

I.      **Mr. Marsh's motion to set aside the verdict on the Company's breach of contract and fraud claims.**

**A. Breach of Contract**

In both his motion for judgment as a matter of law and his motion to amend judgment, Mr. Marsh contends that ERISA bars the Company from recovering on its breach of contract and fraud claims as a matter of law, and that the jury verdict on those counts should thus be set aside.[4] Mr. Marsh concedes—as he must—that the facts found by the jury are binding even as applied to this question of equity: "[W]ithholding the entry of judgment in favor of the Company on the jury's verdict does not undermine the verdict itself or the jury's findings reflected in the verdict." Defs.' Second Br. 5–6.[5] He argues instead that the breach of contract and fraud are irrelevant, because the Company's damages award would necessarily "offset" his ERISA recovery, thus violating Section 12.7 of the Employment Agreement's prohibition against "any offset, counterclaim, recoupment, defense or other right which the Company may have against the executive." *See* Am. Compl. Ex. A, § 12.7. In his words, the prohibition on "affecting Mr. Marsh's ERISA benefits… means as a matter of law that the breach of contract and fraud claims should not have been submitted to the jury." Def.'s First Br. 5.

Mr. Marsh made a nearly identical argument when he sought summary judgment on the company's contract and fraud claims during the early stages of this litigation. In denying his motion, we stated as follows:

> Because the damages the Company seeks to recovery under its breach of contract and fraud and deceit claims stem from alleged misappropriations by Mr. Marsh and his abuse of authority as CEO, it does not appear that such damages are related to any payment obligations the Company actually had under the

---

[4] Mr. Marsh concedes—as he must—that "withholding the entry of judgment in favor of the Company on the jury's verdict does not undermine the verdict itself.

[5] "Defendant's Second Brief" for purposes of this order refers to Don Marsh's Brief in Support of Motion to Amend Judgment [Docket No. 313], which was preceded chronologically by his motion for judgment as a matter of law ("Plaintiff's First Brief") [Docket No. 311].

> Agreement. These damages were the result of non-ERISA compensation and
> benefits that Mr. Marsh erroneously or wrongfully caused the Company to pay
> him and arguably far exceeded any entitlement to him under the Agreement.

Docket No. 136, at 15. Mr. Marsh's misappropriations are now no longer "alleged," and we see

no reason to disturb our prior conclusion that his conduct violated portions of his Employment

Agreement—namely, Paragraphs 3, 5.7(c), and 6—entirely separate from the Company's post-

termination obligations to him under ERISA. As both parties have conceded and we have

repeatedly affirmed, ERISA governs only part of the Employment Agreement, and the statute

does not foreclose common-law claims based on the violation of non-ERISA provisions. *See*

Docket No. 294, at 11–15. Further, we reaffirm our view that, while Section 12.7 of the

Agreement may ban offsets against the Company's obligations, it does not constitute an

unconditional release by the Company of money claims against Mr. Marsh for any misconduct

whatsoever; Mr. Marsh's attempt to construe the contract in this manner stretches it to the point

of inanity.

   We have already held that Section 12.7 safeguards to Mr. Marsh "all amounts payable by

the Company," but that it does not constitute an unconditional release. Docket No. 136, at 18.[6]

As the Company has pointed out, it has not sought to collect its contract and tort damages by

offsetting or garnishing Mr. Marsh's ERISA benefits, and there is no reason it need do so.

Money is, of course, fungible; paying his tort liabilities will surely diminish the net utility that

Mr. Marsh derives from his generous salary continuation package. While this may be a

fundamental truism of economics, however, it is not a license to pillage with impunity. While

Mr. Marsh may offset his tort judgment losses against his ERISA gains if he so chooses, the

basic premises of compensatory justice make clear that the gains he offsets when he pays the

---

[6] The jury likewise found that the Company had not released its common law claims against Mr. Marsh. Docket No.
251 ¶ 7.

company are actually the spoils of his practice of double- or triple-billing the Company for his personal recreational pursuits. This segregability of funds and obligations may be a legal fiction, but it is a useful and necessary one.

Mr. Marsh's argument that Section 12.7, apart from prohibiting explicit offsets against his ERISA entitlement, immunizes him from *any* liability to the company, asks us to countenance an absurd result foreclosed by accepted principles of contract interpretation. *See, e.g.*, *BKCAP, LLC v. CAPTEC Franchise Trust 2000-1*, 572 F.3d 353, 359 (7th Cir. 2009). In the context of ERISA, the canon against absurdity may caution against reading the statute's protections so broadly that they crowd out common law causes of actions on fundamentally unrelated issues. *See Bui v. Am. Tel. & Tel. Co.*, *Inc.*, 310 F.3d 1143, 1148 (9th Cir. 2002) (declining to construe ERISA to preempt medical malpractice claims because the result would be "absurd"). Here, the language of the contract is clear and unambiguous: it "firmly establishes Mr. Marsh's unqualified right to receive his employee benefits and the Company's corresponding duty, when such benefits came due, to pay them without dispute." Docket No. 294 at 20. To read its prohibition on recoupments or offsets to bar *any* recovery against Mr. Marsh for *any* torts, however, would expand the scope of the provision to an absurd extent—a proposition for which none of his cited cases provide support. *Cf. Foley v. Am. Elec. Power*, 425 F. Supp. 2d 863, 870 (S.D. Ohio 2006) (concerning the effect of an anti-offset provision on a company's explicit attempt to reduce employee's plan compensation); *Maynard v. Merrill Lynch & Co., Inc.*, 2008 WL 4790670, at *12 (M.D. Fla. Oct. 28, 2008) (repudiating a company's attempt to reduce ERISA compensation under a "top-hat" plan by an offset). It may be reasonable to assume that the drafting parties intended to make Mr. Marsh's ERISA benefits themselves ironclad, but to impute to the Company an intent thereby to immunize Mr. Marsh from the consequences of then-

unknown years of rampant misconduct strains credulity.[7] We therefore DENY Mr. Marsh's

motions for judgment as a matter of law and amended judgment with respect to the Company's

breach claim, and we reaffirm the entry of judgment pursuant to the jury's factual findings.

**B. Fraud**

In addition to his general argument that both the contract and fraud claims are foreclosed

by Section 12.7 and ERISA, Mr. Marsh also argues that the Company's fraud claim fails as a

matter of law, contending that the allegation is "simply a repackaged version of the Company's

breach of contract claim." Def.'s First Br. 5. In support of his position, he reminds us where a

plaintiff brings both contract and fraud claims, the fraud claim must "allege[] an injury that is

distinct from the injury set forth in its breach of contract claim." *Id* (citing *CoMentis, Inc. v.

Purdue Research Found.*, 765 F. Supp. 2d 1092, 1107 (N.D. Ind. 2011)).

Indiana law prohibits plaintiffs from recovering on a separate cause of action for fraud

when their allegations merely duplicate the facts of their underlying breach of contract claims.

"The Indiana legislature did not intend to criminalize bona fide contract disputes," *French-Tex

Cleaners, Inc. v. Cafaro Co.*, 893 N.E.2d 1156, 1167 (Ind. Ct. App. 2008), and therefore the

crucial question in assessing the viability of a separate fraud claim is "whether [the defendant] is

alleged to have done anything that constituted an independent tort if there were no contract."

*Koehlinger v. State Lottery Comm'n of Ind.*, 933 N.E.2d 534, 542 (Ind. Ct. App. 2010).

However, the existence of a contract between two parties does not mean that a wronged party's

recovery is limited only to breach of contract damages; a tortfeasor's misconduct can violate the

freestanding duties imposed by tort law as well as an express contractual duty. "To the extent

that a plaintiff's interests have been invaded beyond mere failure to fulfill contractual

---

[7] Because we find Mr. Marsh's suggested reading of Section 12.7 to be untenable, we need not reach the Company's
alternative argument that such a contract would violate Indiana's public policy.

obligations, a tort remedy should be available." *Greg Allen Const. Co. v. Estelle*, 798 N.E.2d 171, 175 (Ind. 2003).

The Court has already considered and rejected the argument that Mr. Marsh now presents again. At trial, we specifically repudiated his contention that the breach and fraud claims could not be presented simultaneously. *See* Docket No. 239 at 3; Tr. Transcript 1838:12–1841:7; 1843:9–12. Here, the jury found that Mr. Marsh committed the separate torts of actual and constructive fraud, and it determined that Mr. Marsh was liable for $800,000 in compensatory damages for that fraud. *See* Docket No. 251. There were at least two extra-contractual grounds on which their finding might have been based. First and most fundamentally, they found that "Mr. Marsh violated his obligation to deal fairly with the company, including misrepresenting his use of the e-voucher system, the company plane, petty cash, and per diem reimbursements, [or] failing to disclose the nature of those expenses when he had an obligation to disclose." *Id.* at ¶ 4. This misconduct is greater in scope than the three specific contractual obligations the jury found violated; it sounds in an executive's broad, extra-contractual fiduciary duty to deal "fairly, honestly, and openly with his corporation." *Geiger & Peters, Inc. v. Berghoff*, 854 N.E.2d 842, 849 (Ind. Ct. App. 2006); *see generally G & N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 240 (Ind. 2001). Additionally, as the Company has pointed out, the jurors were presented with detailed evidence of the expenses the Company incurred in defending an IRS audit that arose from Mr. Marsh's misconduct—expenses not necessarily encompassed within the results of Mr. Marsh's breaches of contract.[8] Pl.'s Second Resp. 10–11. The Company notes that the jury's

---

[8] Mr. Marsh rejoins that the Company's expert witness on the IRS audit, Michelle Skeen, noted that "[i]t was the company's position, it's still the company's position, that those expenses were not ordinary and necessary." *See* Def.'s Second Reply 4. Thus, he implies, the audit expenses arose merely out of Mr. Marsh's breach of Section 6 of the Employment Agreement. But to say that the expenses themselves were outside the scope permitted to Mr. Marsh by his contract is not the same as to say that his years-long fraudulent concealment of his misappropriations from the company is misconduct of the same type or degree as a mere failure to keep his expenses within set limits.

award of $800,000—having found Mr. Marsh 50% responsible for the damages arising from his

fraud—very nearly matches one-half of the Company's claimed audit-related damages of

$1,601,758. It is possible that this thinking informed the jury's verdict. *Id*. at 10. We need not

speculate as to their precise reasoning, however, to conclude that the framework in which they

reached their verdict was not defective as a matter of law. Mr. Marsh's motions for judgment as

a matter of law and amended judgment with respect to the Company's fraud claim are thus

DENIED.

## II.     The Company's motion to amend the post-trial order on Mr. Marsh's entitlement to ERISA benefits.

The Company argues that our post-trial order was in error because it factually

contradicted the jury's findings and contained four "manifest errors of law." Pl.'s Br. 7–8. We

find that none of these arguments clears the high bar necessary to prevail on a motion to amend

judgment under Rule 59.

The Company takes issue with our determination that "undisputed evidence presented at

trial revealed that the Company's Board was well aware of Mr. Marsh's alleged misconduct at

the time it was occurring and prior to his termination, yet opted to terminate his employment

'without cause.'" Pl.'s Br. 9 (quoting Docket No. 294 at 26). It argues that the Court's

conclusion in this regard is inconsistent with the jury verdict—specifically the jurors' findings

that the Company did not waive their contract claims in drafting the Employment Agreement and

that the Company relied on Mr. Marsh's fraudulent misrepresentations. *Id.* But there is no

inherent inconsistency between our post-trial order and the jury findings here; it is entirely

reasonable to conclude that the Company relied to its detriment on Mr. Marsh's years-long

course of misrepresentations, but nonetheless had sufficient information by 2006 that its decision

to terminate him without cause was not taken in the dark. As we noted in our order, the fact that

the Company "fell asleep at the wheel" is amply reflected in the jury's fraud verdict, which found the Company 50% responsible for its own losses. *Id.* at 19. The Company now asks us to do precisely what it has—rightfully—accused Mr. Marsh of doing throughout the course of this litigation: conflating the Company's tort claims and the ERISA issue such that the jury's findings with respect to one would compel a favorable resolution of the other. We decline to do so, and we further affirm our view that the Company, no matter how victimized by Mr. Marsh's appalling conduct as its CEO, must bear some responsibility both for freely granting him an ironclad benefits package and for terminating Mr. Marsh in a manner that triggered the plan's practically irreversible largesse.

Additionally, the Company alleges that our post-trial order made four clear errors of law warranting reconsideration.

First, it objects to our ruling on the availability of equitable relief under ERISA, contending that "the Company is entitled retroactively to administer the portion of his Employment Agreement that constitutes an ERISA plan to effectuate a for-cause termination." Pl.'s Br. 10. By holding "as a matter of law" that Mr. Marsh's benefits became vested upon his termination without cause, the Company argues that our post-trial order contradicted our earlier statement that "if the Company can prove, based on the evidence adduced, that Mr. Marsh's misconduct warrants 'equitable relief' by showing that he was unjustly enriched…it may be entitled to an award for restitution and/or retroactive administration of a 'for cause' termination…." Pl.'s Br. 11 (quoting Docket No. 58 at 15); *see also* Docket No. 226 at 32. However, we have never held that Mr. Marsh's benefits were vested and irrevocable as a "matter of law." Instead, our conclusion on this score came at the close of a substantial discussion of the facts of this case. We noted that the Company chose to terminate Mr. Marsh without cause

despite having ample grounds for refraining from doing so—and that equity dictates that "both parties must answer for their own regrettable behavior." Docket No. 294 at 19. We further noted the firm, unambiguous language of Section 12.7 of the Agreement, and concluded that: "[W]here, as here, the ERISA plan makes these benefits contractually nonforfeitable, the Court is free to conclude that the benefits in question have vested." *Id.* at 23. Thus, the post-trial order did not contradict our earlier statements, but reflected our considered judgment that the circumstances of the case—including the Company's own conduct and the ironclad nature of the anti-forfeiture provision—weighed in favor of finding the ERISA benefits vested. The Company has not pointed to any grievous legal errors in this reasoning, which we now affirm.

Second, the Company takes issue with our conclusion that Section 7.3 of the Employment Agreement is outside Mr. Marsh's ERISA plan. Pl.'s Br. 12–14. Section 7.3 is integral to both the structure of the ERISA plan and the Company's prospects of obtaining retroactive relief, it argues, because the section's "for cause" dismissal provision serves as a "forfeiture clause" moderating the benefits provided under Sections 7.4 and 12.7. *Id.* The company here merely reprises the argument that it presented, and we rejected, in the aftermath of the jury verdict. In our post-trial order, we concluded that the Company's proffered interpretation "stretches the language of the Employment Agreement too far." Docket No. 294 at 14. We noted that a more natural reading of the Agreement suggests that Section 7.4 provides a description of the ERISA benefits available if Mr. Marsh is discharged without cause, while the definitions contained in Sections 8.1 and 8.3—delineating what constitutes "cause" or "good reason" for dismissal—serve as the ERISA "eligibility rule." *Id.* at 14 (citing Am. Compl. Ex A, at 8). Section 7.3, in other words, describes what would happen to Mr. Marsh *after* he was fired for cause, but it need not be read as integral to his ERISA package. We also noted that the

Company's argument for the inclusion of Section 7.3 directly contradicted its previous position

on the matter—that "the Salary Continuation Benefit is the only post-employment component of

[the] Employment Agreement that constitutes an ERISA employee benefit plan and, therefore,

the only one that is governed by ERISA." *Id.* at 13 (quoting Docket No. 25 at 14). The Company

now rejoins that our order neglected to address several cases it cited in its post-trial reply brief.

None of the authorities brought forward by the Company, however, directly support its

argument. Rather, these decisions from the First and Second Circuits support only the general

proposition—which no one disputes here—that provisions "determining the eligibility of

claimants" are often essential to ERISA plans. *See Tischmann v. ITT/Sheraton Corp.*, 145 F.3d

561, 567 (2d Cir. 1998); *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 76 (2d Cir.

1996); *Simas v. Quaker Fabric Corp. of Fall River,* 6 F.3d 849, 853 (1st Cir. 1993); *see*

*generally Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S.1, 9 (1987) ("An employer that

makes a commitment systematically to pay certain benefits undertakes a host of obligations, such

as determining the eligibility of claimants…."). While precedent thus dictates that *some*

eligibility test, where applicable, should be included within a court's conception of an

employee's ERISA plan, it does nothing to compel acceptance of the Company's particular

reading—that Section 7.3 rather than Section 8.1 fits the bill. Our reading of the contract in this

regard may not be the only conceivable one, but the Company has provided no support for its

contention that it constituted clear legal error.

Third, the Company insists that we erred in characterizing its request for equitable relief.

Pl.'s Br. 15–16. Because Section 7.3 serves as a "forfeiture provision," the Company argues that

it was not in fact "ask[ing] the Court to retroactively administer [the plan] in a way that alters its

terms to [the company's] advantage." Pl.'s Br. 15 (citing Docket No. 294 at 19). Instead, it

14

asserts, they were merely asking for administration of the relief the Agreement itself anticipated—activation, albeit retroactively, of the Section 7.3 "for cause" termination status. *Id.* Since we confirm our previous holding that Section 7.3 falls outside the ERISA plan, however, it follows necessarily that a request for retroactive for-cause termination is tantamount to a request to alter the plan.

Finally, the Company argues that we misinterpreted the Supreme Court's recent decision in *US Airways, Inc. v. McCutchen,* 133 S. Ct. 1537 (2013), in support of our denial of the kind of "at-large" equitable relief the Company sought under Section 502(a)(3) of the statute. Pl.'s Br. 16–20. In *US Airways,* the Court held that a company could not rely on unjust enrichment or other equitable principles to defeat its contractual obligations to pay on a benefits plan when the recipient had already received compensation from a third party. 133 S. Ct. at 1547–1548. The Court explained the situation as a "the modern-day equivalent of an 'equitable lien by agreement,'" the enforcement of which "means declining to apply rules—even if they would be equitable in a contract's absence—at odds with the parties' expressed commitments." *Id.* at 1546.

The Company contends that our citation was inapt because of the factual divergence between this case and *US Airways*: "The Supreme Court did not face issues of fraud, deceit, or other misdeeds by the party seeking to enforce the agreement." Pl.'s Br. 17. A reading of *US Airways* barring any equitable remedies in the face of clear contractual commands, the Company argues further, would imply that the Supreme Court had overruled *sub silentio* a body of precedent—including "slayer," fraud, mistaken-payment, and scrivener's error cases—allowing just such an equitable override. Pl's Br. 18. Once again, the Company's argument here commits the fundamental sin that has permeated the submissions of both parties during the long life of this litigation: it misunderstands—or pretends to—the difference between the ERISA and non-

ERISA claims. There is indeed precedent for equitable relief overriding contractual provisions. When an insured procures benefits by making false representations about his health, *see Sec. Life Ins. Co. of Am. v. Meyling,* 146 F.3d 1184, 1191 (9th Cir. 1998), or when a contract itself is invalid as fraudulently induced, *Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 819 (7th Cir. 2010), or when a scrivener's error materially alters the expectations of the parties, *see Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 584 (7th Cir. 1999), then equitable relief may be appropriate. None of the Company's citations, however, supports the entirely different proposition that a contract can be cast aside when an ERISA beneficiary has engaged in wrongdoing unrelated to the company's contractual obligations to him. *US Airways* is wholly consistent with drawing the line against such a drastic "at-large" remedy under Section 502(a)(3), and we reaffirm our decision to do so.

## III.   Mr. Marsh's request for prejudgment interest on his ERISA award

In his motion to amend judgment, Mr. Marsh requests an award of prejudgment interest on his favorable ERISA verdict and his attorneys' fees award, in the amount of $427,037.29.[9] Rule 59(e) motions can be a proper vehicle for such a request.[10] *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989); *Prostyakov v. Masco Corp.*, 2008 WL 4810590, at *2 (S.D. Ind. Oct. 28, 2008).

---

[9] Of this claimed amount, $80,261.76 consists of prejudgment interest on attorneys' fees. We have not yet determined the amount of attorneys' fees due each party on their respective prevailing claims, and we will dispose of their motions regarding attorneys' fees in a separate order. We therefore reserve the question of any prejudgment interest on fees.

[10] In *First State Bank of Monticello v. Ohio Cas. Ins. Co.*, 555 F.3d 564 (7th Cir. 2009), the Seventh Circuit acknowledged the general rule that attorneys' fees can be requested as part of a motion to amend judgment, but noted that "the rule may not be used by 'a party to complete presenting his case'" to the district court. 555 F.3d at 572 (citations omitted). In other words, prejudgment interest should not be raised for the first time only after a final judgment has been entered. Here, however, since we have not reached a final disposition of the matter of attorneys' fees and we have pending before us Mr. Marsh's unopposed Rule 58(e) motion to postpone the effect of our final judgment so that attorneys' fees, costs, and litigation expenses may be addressed before appellate rights must be invoked [Docket No. 301], we find that the court's admonition in *First State Bank* does not bind us here.

An award of prejudgment interest may be appropriate in ERISA cases, especially where it is necessary to fully compensate the beneficiary or to prevent unjust enrichment. *See Trustmark Life Ins. Co. v. Univ. of Chi. Hosps.*, 207 F.3d 876, 885 (7th Cir. 2000); *Lorenzen v. Employees Retirement Plan of Sperry & Hutchinson Co.*, 896 F.2d 228, 236–237 (7th Cir. 1990). The Seventh Circuit has recognized that there is a presumption in favor of awarding prejudgment interest in ERISA cases, and has further explained that the decision is "a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." *See Fritcher v. Health Care Servs. Corp.*, 301 F.3d 811, 820 (7th Cir. 2002); *see also Rivera v. Benefit Trust Life Ins. Co.*, 921 F.2d 692, 696 (7th Cir. 1991).

Here, we find that a prejudgment interest award would be inappropriate because the Company pursued its ERISA claims in good faith. As we observed in our post-trial order, "[t]he sense that one who has misled others should not benefit when all is said and done hovers over this litigation." Docket No. 294 at 19. Although we have held that Mr. Marsh's bewildering display of greed and deceitfulness does not abrogate the Company's self-imposed contractual obligations to him under ERISA, the Company can nonetheless be forgiven for seeking to claw back his benefits concurrently with its efforts to secure recovery on its contract and fraud claims. Although the Company's claims were ultimately untenable, they were plausible enough to survive both judgment on the pleadings and summary judgment. *See* Docket No. 287 at 2–4. The Company bears some responsibility for digging itself the hole in which it now finds itself, but there is nonetheless no question that it, rather than Mr. Marsh, has suffered the preponderance of harm here; the delay in Mr. Marsh's ERISA payments occasioned by the longevity of this litigation reflects the Company's understandable efforts to extricate itself.

The ERISA and non-ERISA components of this litigation are thus far easier to separate legally than temporally. Taken as a whole, we find that the Company's position was sufficiently colorable that we can assume it was driven by good faith, not a desire to harass the "prevailing" party. *Cf. Trustmark*, 207 F.3d at 884–885 (applying a good-faith test). Mr. Marsh prevailed on the ERISA question, but his loss of interest on his benefits in these intervening years can be laid squarely at his feet; it was his gross misconduct—rather than any freestanding attempt by the Company to cheat him out of the fruits of his ERISA entitlement—that spawned this seemingly interminable dispute. Mr. Marsh's motion to amend judgment to include an award of prejudgment interest is accordingly DENIED.

## IV. The Company's requests concerning Sections 9.1 and 9.2 of the Employment Agreement

For the first time, the Company now calls our attention to Sections 9.1 and 9.2 of Mr. Marsh's Employment Agreement. These provisions, added to the Agreement in 2005, are attempts to address the tax liability imposed by the Internal Revenue Code on "excess parachute payments." *See* Def.'s Answer Ex. A, at 10. Section 9.1 calls for a "gross-up" payment to Mr. Marsh to compensate for any excise tax levied on his benefits, and Section 9.2 mandates the appointment of an outside accounting firm to oversee the obligations between the parties on this issue. *Id.* The Company asks us to amend our post-trial order and judgment to "clarify that they do not interpret or affect any rights or obligations under Sections 9.1 and 9.2 of the Employment Agreement." Pl.'s Br. 4.

Sections 9.1 and 9.2 relate to "distributions by the Company to or for the benefit of" Mr. Marsh, and thus appear to fall within the scope of his ERISA plan. The time has passed, however, for either party to raise new arguments regarding the Company's contractual obligations to Mr. Marsh. *See Martin v. City of Indianapolis*, 28 F. Supp. 2d 1098, 1101 (S.D.

Ind. 1998) (quoting *FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)). While we thus recognize that these provisions likely bind the parties, we do not disturb the amount of our judgment for Mr. Marsh. If the Company fails to perform its obligations under these sections of the Employment Agreement—which were not subjects of this litigation—it may expose itself to further ERISA liability; its obligation pursuant to this order, however, remains to pay Mr. Marsh in the full amount we previously awarded, that is, $2,171,261.48. *See* Docket No. 294 at 33.

## V.     The Company's request to vacate the award on Mr. Marsh's breach of contract claim

Finally, the Company calls for us to vacate our breach of contract award to Mr. Marsh, arguing that it is preempted by ERISA. *See* Pl.'s Br. 20. In our post-trial order, we found in Mr. Marsh's favor on Count II of his Amended Counterclaim, seeking breach of contract damages for the Company's failure to pay him his full salary continuation and other benefits in violation of Section 7.4 of the Employment Agreement. *Id.* As we have previously held, Section 7.4 is a part of Mr. Marsh's ERISA plan, and ERISA preempts any duplicative state law claims. *See* Docket No. 58 at 10.

We concede that our judgment in Mr. Marsh's favor for his breach of contract claim— whose damages duplicate his ERISA claim exactly—was clear legal error, as Mr. Marsh now also concedes. *See* Def.'s Resp. 22. We therefore vacate our judgment on Count II of Mr. Marsh's Amended Counterclaim and dismiss his breach of contract claim. Mr. Marsh's entire recovery of $2,171,261.48 is based on his successful § 1132(a)(1) ERISA claim.

## Conclusion

In ruling on Mr. Marsh's renewed motion for judgment as a matter of law and the parties' motions to amend judgment, we have not addressed their arguments related to the issue of attorneys' fees and costs—namely, Section II of Mr. Marsh's motion to amend judgment and

Section III of the Company's motion to amend judgment. We will address those arguments in conjunction with our rulings on the parties' separate motions regarding attorneys' fees and costs.

Having considered the parties' arguments and objections, we decline to alter materially our post-trial order, finding that the parties have neither adduced newly discovered facts nor pointed to any manifest legal errors compelling the abandonment of our earlier reasoning—with the exception, however, that we vacate Mr. Marsh's breach of contract judgment and clarify that his entire recovery proceeds from his statutory ERISA claim. Therefore:

(1) Defendant/Counterclaimant Don E. Marsh's Motion for Renewed Motion for Judgment as a Matter of Law pursuant to Federal Rules of Civil Procedure 50(b) [Docket No. 310] is DENIED.

(2) Defendant/Counterclaimant Don E. Marsh's Motion to Amend Judgment pursuant to Federal Rules of Civil Procedure 59(e) [Docket No. 312] is DENIED.

(3) Plaintiff/Counterclaim-Defendant Marsh Supermarkets' Motion to Amend Order on Post-Trial Claims and Final Judgment, also pursuant to Rule 59(e) [Docket No. 314] is GRANTED with respect to Paragraph 4, and we therefore vacate our award on Count II of Mr. Marsh's Amended Counterclaim and amend our Order on Post-Trial Motions accordingly.

(4) Plaintiff/Counterclaim-Defendant Marsh Supermarkets' Motion to Amend Order on Post-Trial Claims and Final Judgment, also pursuant to Rule 59(e) [Docket No. 314], is DENIED in all other respects.

IT IS SO ORDERED.

Date:   10/11/2013

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP
amcneil@boselaw.com

Jonathan Lamont Mayes
BOSE MCKINNEY & EVANS, LLP
jmayes@boselaw.com

Winthrop James Hamilton
BOSE MCKINNEY & EVANS, LLP
jhamilton@boselaw.com

David K. Herzog
FAEGRE BAKER DANIELS LLP - Indianapolis
david.herzog@faegrebd.com

Munjot  Sahu
FAEGRE BAKER DANIELS LLP - Indianapolis
munjot.sahu@faegrebd.com

Ryan Michael Hurley
FAEGRE BAKER DANIELS LLP - Indianapolis
ryan.hurley@FaegreBD.com

C. Joseph Russell
KRIEG DEVAULT LLP
crussell@kdlegal.com

Linda Joy Cooley
KRIEG DEVAULT, LLP
lcooley@kdlegal.com